**AFFIRM; and Opinion Filed February 20, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01463-CV

## CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH AND CREDIT SUISSE SECURITIES (USA) LLC, Appellants
## V.
## CLAYMORE HOLDINGS, LLC, Appellee

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-07858-G**

## MEMORANDUM OPINION
Before Justices Lang-Miers, Brown, and Boatright
Opinion by Justice Lang-Miers

In this appeal, we determine whether, under New York law, disclaimers in a contract between appellants/cross-appellees Credit Suisse AG, Cayman Islands Branch and Credit Suisse Securities (USA) LLC ("Credit Suisse") and appellee/cross-appellant Claymore Holdings, LLC ("Claymore") relieved Credit Suisse of liability for an allegedly fraudulent real property appraisal. We also consider whether the trial court erred in its award of damages to Claymore in the final judgment. In Claymore's cross-appeal, we consider whether the trial court erred in its award of prejudgment interest or by failing to award damages for unjust enrichment. For the reasons we explain below, we conclude that the trial court did not err in its rulings on these issues. We affirm the trial court's judgment.

# BACKGROUND[1]

In 2007, Claymore[2] invested $250 million in a refinancing of real property in Las Vegas. Credit Suisse acted as "administrative agent" for the refinancing deal. In that capacity, Credit Suisse procured an appraisal of the property. After a series of tolling agreements between the parties expired, Claymore sued Credit Suisse alleging it manipulated the appraisal to inflate the value of the property, and that Claymore's entire $250 million investment was lost because of Credit Suisse's fraud and breaches of contract. Claymore's fraud claims were submitted to a jury. The jury awarded Claymore $40 million on one of its fraud claims. Claymore's breach of contract claims were tried to the court. The trial court's final judgment awarded Claymore $211,863,998.56 in damages, prejudgment interest of $75,644,154.22, court costs, and post-judgment interest.

The contract at issue is an amended and restated credit agreement dated June 22, 2007 ("Credit Agreement"). In the Credit Agreement, the parties refer to Credit Suisse as "Administrative Agent." Claymore is a "Lender." Section 2.3 of the Credit Agreement required Credit Suisse to make the loan proceeds available to the borrowers "[u]pon satisfaction or waiver" of specified "conditions precedent." In its operative petition, Claymore alleged that Credit Suisse breached this provision by failing to satisfy one of the specified conditions precedent, to receive a "Qualified Appraisal" of the property "in a form reasonably acceptable" to Credit Suisse, as required in section 3.1(H)(vi) of the Credit Agreement. "Qualified Appraisal" was defined in section 1.1 of the Credit Agreement:

> **Qualified Appraisal** means any real estate appraisal conducted in accordance with the Financial Institutions Reform Recovery and Enforcement Act ("FIRREA"), the Uniform Standards of Professional Appraisal Practice

---

[1] The facts are well known to the parties and extensively documented in the 55-volume reporter's record and the trial court's comprehensive findings. We summarize only those facts necessary to resolve the parties' issues in this appeal.

[2] Claymore's operative petition alleges that Claymore is the assignee of certain managed investment funds that participated as lenders in the subject loan transaction. For simplicity we refer to these assignors collectively as "Claymore" although the assignments had not been made at the time of the refinancing transaction.

["USPAP"] (as promulgated by the Appraisal Standards Board of the Appraisal Foundation) and all requirements of Applicable Law applicable to Administrative Agent undertaken by an Appraiser, and providing an assessment of the Appraised Value (Land Only) and the Appraised Value (All Collateral), **the form and substance of such appraisal to be reviewed and approved by the Administrative Agent in its reasonable judgment**.

(Emphasis added).

At trial, Claymore offered evidence that

- Claymore agreed to participate in the refinancing only if Credit Suisse obtained an as-is market value appraisal of the property that complied with FIRREA;

- The appraisal Credit Suisse received did not include an as-is market value appraisal of the property that complied with FIRREA, and therefore was not a "Qualified Appraisal";

- Credit Suisse knew the appraisal was not a "Qualified Appraisal," because Credit Suisse and the appraiser CBRE, Inc. manipulated the valuation of the property before the appraisal was finalized and provided to Claymore;

- Prior to the execution of the Credit Agreement, Credit Suisse represented to Claymore that the appraised "FIRREA value" of the property, based on CBRE's appraisal, was $891 million; and

- An appraisal that complied with FIRREA would have revealed the as-is market value of the property to be less than $540 million, the total amount of the loan.

Credit Suisse, in turn, relied on the Credit Agreement's extensive disclaimers and exculpatory provisions. Section 8.3 provided:

The Agents shall not have any duties or obligations except those expressly set forth herein and in the other Loan Documents. . . . The Agents shall not be responsible for or have any duty to ascertain or inquire into (i) any statement, warranty or representation made in or in connection with this Agreement or any other Loan Document, (ii) the contents of any certificate, report or other document delivered hereunder or thereunder in connection herewith or therewith, (iii) the performance or observance of any of the covenants, agreements, or other terms or conditions set forth herein or therein or the occurrence of any Default or Event of Default, (iv) the validity, enforceability, effectiveness or genuineness of this Agreement or any other Loan Document or any other agreement, instrument or document or (v) the satisfaction of any condition set forth in <u>Section 3</u> or elsewhere herein, other than to confirm receipt of items expressly required to be delivered to the Agents.

Section 8.8 provided:

> Each Lender acknowledges that it has, independently and without reliance upon any Agent . . . and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement. Each Lender also acknowledges that it will, independently and without reliance upon the [sic] any Agent . . . and based on such documents and information as it shall from time to time deem appropriate, continue to make its own decisions in taking or not taking action under or based upon this Agreement, any other Loan Document or any related agreement or any document furnished hereunder or thereunder.

Additionally, section 8.4 of the Credit Agreement provided that Credit Suisse would not incur liability for relying on any "certificate . . . believed by it in good faith to be genuine."

Relevant to Claymore's fraud claims, Claymore agreed in a separate "Assignment and Assumption Agreement" ("A&A"), under which the actual loans were made, that it had "received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision . . . ." Claymore also agreed that "it will, independently and without reliance on Administrative Agent . . . and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents . . . ."

The trial court concluded that neither section 8.3 nor section 8.8 of the Credit Agreement relieved Credit Suisse of liability for breach of contract or fraud. In its detailed findings and conclusions, the trial court explained that the Credit Agreement's express requirement that Credit Suisse review and approve a Qualified Appraisal was an exception to the exculpatory provisions in section 8.3. Conclusion of Law ("C.L.") 24 (Credit Suisse had express duties regarding Qualified Appraisal in sections 2.3, 3.1, and 8.3 of Credit Agreement that fell within section 8.3's exception for duties or obligations "expressly set forth herein"). The trial court also concluded that section 8.8 "does not expressly disclaim the conduct that Credit Suisse has been proved to have

–4–

engaged in here." C.L. 25. Although the trial court did not make an express conclusion regarding section 8.4, its findings of fact that Credit Suisse knew of the errors in the appraisal would support a conclusion that Credit Suisse did not "believe . . . in good faith" that the appraisal was "genuine."

Each party now appeals the trial court's judgment.

## DISCUSSION

### I. Standards of review

The Credit Agreement provides, and the parties agree, that New York law applies to their substantive claims. Procedural issues, however, are governed by Texas law. *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 824 (Tex. App.—Dallas 2010, no pet.) ("In applying a contractual choice-of-law provision, Texas courts apply the substantive law of the choice-of-law provision but apply Texas law to matters of remedy and procedure."). Procedure includes standards of review. *Id*. We review the trial court's findings of fact and the jury's verdict under the same standards. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). When an appellant challenges the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the finding. *Id.* The finder of fact is the sole judge of the credibility of the witnesses. *Id*. We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

A party who challenges the legal sufficiency of the evidence to support an adverse finding on which he did not have the burden of proof at trial must demonstrate that there is no evidence to support the adverse finding. *Fulgham*, 349 S.W.3d at 157. When reviewing a "no evidence" point, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We

credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* at 827. We sustain a no evidence point only if there is no more than a scintilla of evidence proving the elements of the claim. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 520 (Tex. 2002).

We review a trial court's conclusions of law de novo. *Fulgham*, 349 S.W.3d at 157. And conclusions of law may not be reversed unless they are erroneous as a matter of law. *Id.* at 158. The issue of whether a contract imposes a particular duty on a party is most often a legal question we review de novo, although whether a party has failed to perform under the contract is a factual matter that we review under the traditional evidentiary sufficiency standards. *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 718 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Similarly, under New York law, we construe the trial court's interpretation of the contract de novo. *Duane Reade, Inc. v. Cardtronics, LP*, 54 A.D.3d 137, 140, 873 N.Y.S.2d 14, 16 (N.Y. App. Div. 2008). And we review a trial court's ruling granting equitable relief for abuse of discretion. *Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 428–29 (Tex. 2008).

## II.     Credit Suisse's Issues

In its first issue, Credit Suisse challenges the trial court's findings and conclusions that it breached the Credit Agreement. Credit Suisse contends that Claymore's contract claims arise from obligations that were expressly disclaimed in the Credit Agreement. Specifically, Credit Suisse contends that under the Credit Agreement, it had no responsibility for (1) "verifying a professional appraiser's certification" that its appraisal complied with FIRREA, (2) ensuring the substantive accuracy of the appraisal, or (3) verifying that the appraiser independently evaluated the assumptions and limiting conditions supporting the appraisal.

–6–

In its second issue, Credit Suisse contends that Claymore's fraud claims are barred as a matter of law by the Credit Agreement's "clear contractual language disclaiming any reliance" by Claymore on loan documents provided by Credit Suisse. Credit Suisse also argues that the key assumptions underlying the appraisal were disclosed within the appraisal itself, so that Claymore could not have justifiably relied on any representation by Claymore that the appraisal was compliant with FIRREA.

In its third issue, Credit Suisse challenges the trial court's award of damages. Credit Suisse contends the trial court erred by supplanting the jury's verdict with its own damages calculation. We address the first two issues together.

### A.      Contractual disclaimers

The trial court concluded that the disclaimers in sections 8.3 and 8.8 did not exculpate Credit Suisse from liability in either tort or contract. As we have explained, we review this conclusion de novo. *Vast Constr., LLC*, 526 S.W.3d at 718, *Duane Reade, Inc.,* 54 A.D.3d at 140, 873 N.Y.S. at 16.

Contractual disclaimers are enforceable when sophisticated parties agree to them. *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, No. 93 Civ. 5298(LMM), 1996 WL 609439, at *5 (S.D.N.Y. Oct. 23, 1996) (mem. & order). But an express disclaimer will not be given effect "'where the facts are peculiarly within the knowledge of the party invoking it.'" *Id*. (quoting *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 155 (2d Cir. 1995)). In *Bank Brussels*, the court concluded there were issues of fact precluding summary judgment on the plaintiff's fraud and breach of contract causes of action even though the parties' contract included broad disclaimers of reliance. *Id*. at *5–7. Claymore argues that under *Bank*

*Brussels*, the broad disclaimers in paragraphs 8.3 and 8.8 of the Credit Agreement do not bar its recovery in either contract or tort.

### 1. Contract claims

"In construing a contract, the document must be read as a whole to determine the parties' purpose and intent, giving a practical interpretation to the language employed so that the parties' reasonable expectations are realized." *Snug Harbor Square Venture v. Never Home Laundry, Inc.*, 252 A.D.2d 520, 521, 675 N.Y.S.2d 365, 366 (N.Y. App. Div. 1998). The parties disagree about the scope and extent of Credit Suisse's duties with respect to the property appraisal required as a condition precedent to Claymore's loan under the Credit Agreement.

The "Conditions to Effectiveness" in section 3 of the Credit Agreement included a requirement that Credit Suisse "shall have received" a "Qualified Appraisal" on or prior to the Credit Agreement's effective date. A "Qualified Appraisal" would meet the following requirements:

- it was conducted in accordance with FIRREA;

- it was conducted in accordance with USPAP;

- it was conducted in accordance with applicable law;

- it provided an assessment of "Appraised Value (Land Only)" (defined as "As Is with No View Premium Consideration") and "Appraised Value (All Collateral)" (defined as "As Is with Deferred Sale & Premium Consideration");

- it included a breakdown of appraised value among the subject parcels;

- it was "otherwise in a form reasonably acceptable to Credit Suisse"; and

- its form and substance had been reviewed and approved by Credit Suisse in its reasonable judgment.

Credit Agreement §§ 1.1, 3.1(H)(vi). As the trial court recognized in Conclusion of Law 14, the Credit Agreement required Credit Suisse to "review and approve" only one document—the

–8–

"Qualified Appraisal"—among the ten categories of documents it was to "receive" prior to closing. Credit Agreement § 3.1(H).

At trial, Claymore offered evidence that Credit Suisse breached its contractual duty. Both John Morgan of Claymore and David Miller of Credit Suisse testified that Claymore required an independent, as-is market value appraisal of the property as a material condition of participation in the refinancing. There was evidence that the appraisal did not meet contractual requirements in several respects, including that it did not provide an independent, as-is market value as required by FIRREA. Instead, the trial court found that Credit Suisse participated in manipulating the valuation of the property stated in the appraisal so that it no longer met the Credit Agreement's requirements.

Credit Suisse contends, however, that the disclaimers in sections 8.3 and 8.8 preclude Claymore's recovery for breach of contract. Credit Suisse emphasizes section 8.3's disclaimer that "[t]he Agents shall not be responsible for or have any duty to ascertain or inquire into . . . (v) the satisfaction of any condition set forth in Section 3 or elsewhere herein, other than to confirm receipt of items expressly required to be delivered to the Agents." Claymore responds with section 8.3's language that Credit Suisse "shall not have any duties or obligations *except* those expressly set forth herein" (emphasis added), arguing that reviewing and approving the form and substance of a Qualified Appraisal was an obligation "expressly set forth." We agree with Claymore.

The parties' agreement reflects that Claymore bargained for an appraisal satisfying specific requirements. The agreement assigned responsibility to Credit Suisse for assuring that the appraisal satisfied those requirements. Section 8.3 excepts this specific contractual obligation from its more general disclaimer provisions. *See id.* And section 8.8's general disclaimer of reliance does not control over the parties' express agreement that Credit Suisse would receive a Qualified Appraisal

as a condition precedent to Claymore's loan. "[I]t is a well-established principle of contract interpretation that specific provisions concerning an issue are controlling over general provisions." *Huen New York, Inc. v. Bd. of Educ. Clinton Cent. Sch. Dist.*, 67 A.D.3d 1337, 1338, 890 N.Y.S.2d 748, 749 (N.Y. App. Div. 2009).

In *Bank Brussels*, a revolving credit agreement provided that the lenders' obligations were "subject to the receipt by the Agent of [certain] documents, each of which shall be satisfactory to the Agent in form and substance." *Bank Brussels*, 1996 WL 609439, at *6. The parties' agreement also included disclaimers of reliance similar to those in section 8.8 of the Credit Agreement, including each lender's agreement that it had "independently and without reliance on the Agent . . . made its own credit analysis . . . and decision to enter into this Agreement," "based on such documents and information as it shall deem appropriate." *Id.* at *4. There was evidence, however, that the documents provided by the agent did not reflect that the agent's fees had a substantial impact on the financial condition of the borrower. *See id.* at *4, 6–7. In denying the agent's motion for summary judgment on the lenders' claims for breach of contract, the court explained, "[b]ut, if [the agent] knew, or was grossly negligent in not knowing, that the materials delivered prior to and at closing were materially inaccurate, it cannot argue that these materials were satisfactory in 'substance,'" as the contract required. *Id.* at *7. As a result, the court concluded that there was an issue of fact precluding summary judgment on the lenders' claim for breach of contract, *id.*, even though the lenders had promised to make their own credit analysis and decisions. Here, Claymore offered evidence that Credit Suisse breached similar contractual promises to review and approve the form and substance of the appraisal in its reasonable judgment. Under *Bank Brussels*, the trial court did not err in concluding that the contractual disclaimers did not exculpate Credit Suisse from liability in contract.

We conclude that the Credit Agreement's disclaimers do not preclude Claymore's breach of contract claims. We decide Credit Suisse's first issue against it.[3]

### 2. Fraud claims

The jury found fraud in the inducement by misrepresentation but not by nondisclosure.[4] The jury was not asked to decide, and did not decide, the effect of the contractual disclaimers on Claymore's fraud claims. At the subsequent bench trial, the trial court concluded that the contractual disclaimers did not "exculpate Credit Suisse from liability for tort claims based on superior knowledge,"[5] explaining that "[s]ection 8.8 [of the Credit Agreement] does not expressly disclaim the conduct that Credit Suisse has been proven to have engaged in here." C.L. 25. The question presented is whether, given its sophistication and its agreement to broad contractual disclaimers, Claymore established that it justifiably relied on Credit Suisse's misrepresentations.

As in Texas, New York law requires justifiable reliance on a misrepresentation or omission as an essential element of a fraud claim. *Orlando v. Kukielka*, 40 A.D.3d 829, 831, 836 N.Y.S.2d 252, 254 (N.Y. App. Div. 2007). In Question 1 of the jury charge (inquiring whether Credit Suisse fraudulently induced Claymore to participate in the refinancing by making affirmative

---

[3] Claymore pleaded in the alternative that Credit Suisse breached the covenant of good faith and fair dealing that is implied in every contract under New York law. *See Kirke La Shelle Co. v. The Paul Armstrong Co.*, 263 N.Y. 79, 87, 188 N.E. 163, 167 (N.Y. 1933). The covenant "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500, 746 N.Y.S.2d 131, 135 (N.Y. 2002) (citations and quotation marks omitted). The trial court found that Credit Suisse breached this implied covenant, and that the covenant cannot be waived under New York law. C.L. 48. Where the plaintiff's claim for breach of contract and its claim for breach of the implied covenant arise from the same facts and seek "the identical damages for each breach," however, New York law does not recognize a separate cause of action for breach of the implied covenant. *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423, 426, 894 N.Y.S.2d 47, 49–50 (N.Y. App. Div. 2010); *see also 19 Recordings, Ltd. v. Sony Music Entm't*, 97 F. Supp. 3d 433, 438–39 (S.D.N.Y. 2015) (same). In a dispute involving similar contractual provisions, claims, and parties as those in this appeal, a New York appellate court held that the plaintiff's claim for breach of the implied covenant was properly dismissed as duplicative of the breach of contract claim. *Allenby, LLC v. Credit Suisse, AG*, 134 A.D.3d 577, 579, 25 N.Y.S.3d 1, 4 (N.Y. App. Div. 2015). We conclude that although the trial court should have dismissed Claymore's claim for breach of the implied covenant of good faith and fair dealing, we may not reverse the trial court's judgment on this ground because this error did not cause the rendition of an improper judgment. TEX. R. APP. P. 44.1(a).

[4] Separate from its fraudulent inducement claims, Claymore pleaded a claim for fraud by nondisclosure that was not submitted to the jury. The trial court submitted only Claymore's claims that it had been fraudulently induced to participate in the transaction. This ruling was the resolution of the parties' pretrial dispute regarding the application of the Credit Agreement's "waiver of jury trial" provision.

[5] As we discuss below, under New York law, there is no duty to disclose material information in business transactions unless "one party has superior knowledge that is not readily available/accessible to the other party and that party knows the other party is acting on the basis of mistaken knowledge." *Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 366 (N.D.N.Y. 2013), *aff'd*, 561 Fed. App'x 48 (2d Cir. 2014).

misrepresentations), the jury was instructed that in order to prove fraudulent inducement, Claymore was required to prove by clear and convincing evidence that it justifiably relied on Credit Suisse's misrepresentations. The trial court's instructions applicable to the entire charge included the following instructions regarding justifiable reliance:

> You are instructed that "justifiable reliance," as used in Question Nos. 1 and 3 means that Plaintiff must prove that Plaintiff justifiably relied on the alleged misrepresentation or omission. It is not necessary for the alleged fraudulent representation or omission to have been the exclusive cause of plaintiff's action or nonaction; it is sufficient that the representation was a substantial factor in inducing plaintiff to act or refrain from acting. Reliance is not justified when a plaintiff could have discovered the true facts with due diligence. Whether the person to whom a representation was made is justified in relying upon it generally depends upon whether the fact represented is one that a reasonable person would believe and consider important in deciding to enter into a transaction, **whether the facts that were misrepresented or concealed were peculiarly within the other party's knowledge,** and whether the truth could have been uncovered by the exercise of ordinary intelligence and observation.

> In determining whether justifiable reliance existed, you may consider the knowledge and experience of the party claiming to have been defrauded, the existence of a relationship of trust or confidence **or superior knowledge or means of knowledge on the part of the person making the representation.** A party is not absolved of liability merely because an investigation might have uncovered its alleged fraud. The means of knowledge must have been readily available. You are further instructed that a sophisticated plaintiff must make use of the means of verification that are actually available to it.

(Emphasis added).

An appellate court must presume that a jury properly followed the trial court's instructions. *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 167 (Tex. 1982); *In re J.A.*, 109 S.W.3d 869, 874–75 (Tex. App.—Dallas 2003, pet. denied). Consequently, we presume that the jury by its "yes" answer to Question 1 found by clear and convincing evidence that Claymore justifiably relied on a misrepresentation by Credit Suisse, considering Credit Suisse's "superior knowledge or means of knowledge" in making the misrepresentation and also considering whether the misrepresented facts were "peculiarly within [Credit Suisse's] knowledge."

–12–

Reliance may be unreasonable as a matter of law, however, where a contract contains disclaimers regarding the subject of the misrepresentations. *See Orlando*, 40 A.D.3d at 831, 836 N.Y.S.2d at 254 (where contract stated that defendants had not verified information provided to plaintiffs, and plaintiffs had means available to determine accuracy of information, reliance on information was unreasonable as matter of law). "Usually, comprehensive disclaimers contained in carefully drafted documents executed by sophisticated commercial parties are sufficient to insulate sellers from tort liability." *Loreley Fin. (Jersey) No. 3 Ltd. v. Citigroup Glob. Mkts. Inc.*, 119 A.D.3d 136, 138, 987 N.Y.S.2d 299, 300 (N.Y. App. Div. 2014). "But there is a limit to the efficacy of those disclaimers . . . ." *Id.*

Under New York law, a plaintiff may claim justifiable reliance on a misrepresentation even if he has signed a contractual disclaimer unless (1) the disclaimer is made sufficiently specific to the particular type of fact misrepresented; and (2) the alleged misrepresentations did not concern facts peculiarly within the defendant's knowledge. *Id.*, 119 A.D.3d at 143, 987 N.Y.S.2d at 304 (quoting *Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*, 115 A.D.3d 128, 137, 980 N.Y.S.2d 21, 28 (N.Y. App. Div. 2014)). In *DDJ Management, LLC v. Rhone Group L.L.C.*, the court explained the rule "stated more than a century ago":

> "[I]f the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced into the transaction by misrepresentations."

15 N.Y.3d 147, 154, 931 N.E.2d 87, 91, 905 N.Y.S.2d 118, 122 (N.Y. 2010) (quoting *Schumaker v. Mather*, 133 N.Y. 590, 596, 30 N.E. 755 (N.Y. 1892)). We consider each element in turn.

### a. Sufficient specificity

"[O]nly where a written contract contains a specific disclaimer of responsibility for extraneous representations, that is, that the parties are not bound by or relying upon representations or omissions as to the specific matter, is a plaintiff precluded from later claiming fraud on the ground of a prior misrepresentation as to a specific matter." *Basis Yield Alpha Fund*, 115 A.D.3d at 137, 980 N.Y.S.2d at 28. "In other words, in view of the disclaimer, no representations exist and that being so, there can be no reliance." *Id.*

As quoted above, in the A&A and in section 8.8 of the Credit Agreement, Claymore disclaimed reliance on Credit Suisse. These disclaimers provided that Claymore would make "its own credit analysis" and "its own credit decisions" independently and without reliance on Credit Suisse. Claymore also agreed that it would make its own decisions whether to take action under the Credit Agreement or "any other Loan Document or any related agreement or any document furnished hereunder or thereunder." Claymore could not make a credit analysis or credit decision without an appraisal of the property, and the Qualified Appraisal was a "document furnished under" the Credit Agreement.  Consequently, the disclaimers might be said to address generally the type of fact misrepresented. *See Loreley*, 119 A.D.3d at 143, 987 N.Y.S.2d at 304.

As we have discussed, however, the evidence was that the appraisal received, reviewed, and approved by Credit Suisse was not a "Qualified Appraisal" under the express terms of the Credit Agreement. The general disclaimer of reliance was not a promise that Claymore would forego the specific, bargained-for terms of the Credit Agreement that Credit Suisse receive a Qualified Appraisal that had been reviewed and approved in form and substance in Credit Suisse's reasonable judgment as a condition precedent to the transaction. As the court in *DDJ Management, LLC* explained:

Where, however, a plaintiff has taken reasonable steps to protect itself against deception, it should not be denied recovery merely because hindsight suggests that it might have been possible to detect the fraud when it occurred. In particular, where a plaintiff has gone to the trouble to insist on a written representation that certain facts are true, it will often be justified in accepting that representation rather than making its own inquiry. Indeed, there are many cases in which the plaintiff's *failure* to obtain a specific, written representation is given as a reason for finding reliance to be unjustified.

*DDJ Mgmt., LLC¸* 15 N.Y.3d at 154, 931 N.E.2d at 91, 905 N.Y.S.2d at 122. We conclude that the disclaimers were not made sufficiently specific to the particular type of fact Claymore claimed was misrepresented, the first requirement Claymore was required to establish in order to prove that the contractual disclaimers do not bar its fraud claim. *See id.*

### b.    Facts peculiarly within defendant's knowledge

Next we consider whether Claymore established that the alleged misrepresentations concerned facts peculiarly within Credit Suisse's knowledge. *See Loreley*, 119 A.D.3d at 143, 987 N.Y.S.2d at 304. Credit Suisse argues that because Claymore failed to obtain a jury finding on this issue, Claymore is bound by its contractual disclaimers of reliance. Claymore responds that the jury's "yes" answer to Question 2 in the jury charge, inquiring whether Credit Suisse had "superior knowledge of relevant facts," suffices as a finding that the material facts misrepresented were peculiarly within Credit Suisse's knowledge.

The jury found in response to Question 1 of the jury charge that Credit Suisse fraudulently induced Claymore to participate in the refinancing "by making affirmative misrepresentations." There was no predicate question about Credit Suisse's knowledge. The only predicate question regarding Credit Suisse's "superior knowledge of material facts" was in Question 2. The jury answered Question 2 "yes." Question 3, inquiring whether Credit Suisse fraudulently induced Claymore to participate in the refinancing "by omitting to state a material fact," was predicated on an affirmative response to Question 2. The jury answered Question 3 "no."

Credit Suisse argues that the jury's finding in response to Question 2 cannot be applied to support the response to Question 1 because the underlying factual allegations supporting the affirmative misrepresentation claim in Question 1 were different from the factual allegations supporting the omission claim in Question 3, and Question 2 was a predicate only to Question 3. Credit Suisse maintains that Question 1 was directed to the representation that the appraisal was a "Qualified Appraisal" that complied with FIRREA, while Question 3 was directed to the allegation that Credit Suisse withheld facts relating to the assumptions in the appraisal such as the discounting methodology. Credit Suisse argues that a finding of knowledge about the appraisal's assumptions is not a finding of knowledge that the appraisal did not comply with FIRREA.

Although "superior knowledge of relevant facts" and "facts peculiarly within the defendant's knowledge" are similar concepts, they support different elements of a fraud claim under New York law. "Superior knowledge of relevant facts" is a factor in answering a "duty" question; that is, whether a party had a duty to disclose information during a business transaction. *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 232 (S.D.N.Y. 2007), *aff'd*, 354 Fed. App'x 496 (2d Cir. 2009). And as we have explained, the inquiry whether there are "facts peculiarly within the defendant's knowledge" is a question of justifiable reliance. *Loreley*, 119 A.D.3d at 143, 987 N.Y.S.2d at 304. The two questions overlap, however. Proof of "superior knowledge"— the duty question—requires proof that a "material fact was information peculiarly within the knowledge of the defendant," as the trial court instructed the jury in Question 2. *See Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 366 (N.D.N.Y. 2013), *aff'd*, 561 Fed. App'x 48 (2d Cir. 2014).[6]

_____

[6] Proof of superior knowledge also requires proof of a second element, "that the information was not such that could have been discovered by the plaintiff through the 'exercise of ordinary intelligence.'" *Gander Mountain Co.*, 923 F. Supp. 2d at 366 (quoting *Jana L. v. West 129th Street Realty Corp.*, 22 A.D.3d 274, 278, 802 N.Y.S. 132, 135 (N.Y. App. Div. 2005)).

Here, the jury was instructed to consider the justifiable reliance question—whether the material facts that were misrepresented or concealed were peculiarly within Credit Suisse's knowledge or possession—in order to answer both Questions 1 and 2. For Question 1, the instruction was included in the trial court's general instructions. Question 2 included its own specific instruction. Consequently, regardless of whether the answer to Question 2 applies, the jury considered whether the facts misrepresented were peculiarly within Credit Suisse's knowledge in answering Question 1. In any event, the issue here is the trial court's determination that the contractual disclaimers did not preclude Claymore from justifiably relying on Credit Suisse's misrepresentations. And Credit Suisse does not explain why the trial court could not consider all of the jury's answers in making its independent determination whether the contractual disclaimers barred Claymore's fraud claim, a question that was not submitted to the jury.

Credit Suisse further challenges the sufficiency of the evidence to establish any "superior knowledge." Credit Suisse argues that Claymore had an affirmative duty to protect itself from misrepresentations by investigating the details of the transaction, but "failed to conduct any diligence with respect to the appraisal at all." *See Jana L. v. W. 129th St. Realty Corp.*, 22 A.D.3d 274, 278, 802 N.Y.S.2d 132, 135 (N.Y. App. Div. 2005) (plaintiff "had, at the very least, a duty to inquire" in order to establish "exercise of ordinary intelligence" requirement of superior knowledge). Credit Suisse also argues that there was no evidence that it was "peculiarly knowledgeable about the appraisal's satisfaction of FIRREA standards," and that a review of the appraisal itself revealed the errors that allegedly misled Claymore. But as the court explained in a case involving similar contractual disclaimers:

> Defendants contend that plaintiffs failed to conduct any investigation. However, the contracts at issue implied that the appraisers (both of which were well known firms) would be independent, and said that the appraisals would be conducted in accordance with the Uniform Standards of Professional Appraisal Practice. "Where

. . . a plaintiff has taken reasonable steps to protect itself against deception, it should not be denied recovery merely because hindsight suggests that it might have been possible to detect the fraud when it occurred." (*DDJ Mgt., LLC v. Rhone Group L.L.C.*, 15 N.Y.3d 147, 154 [2010]).

*Allenby, LLC v. Credit Suisse, AG*, 134 A.D.3d 577, 580, 25 N.Y.S.3d 1, 3 (N.Y. App. Div. 2015).

Here, Claymore offered evidence that (1) an independent, as-is appraisal was a material condition for Claymore's assent to the transaction; (2) John Morgan, Claymore's real estate team leader, reviewed and relied on the appraisal; (3) internal Claymore documents supported Morgan's testimony that he reviewed the appraisal; (4) Credit Suisse's instructions to the appraiser undercut the appraiser's independence; (5) no one from the Credit Suisse investment banking team could recall "even a single detail" of a key conference call with the appraiser to discuss the valuation of the property, testimony that the trial court found "not credible" (F.F. 47); and (6) Credit Suisse knew that the appraiser's conclusions lacked support. Credit Suisse offered evidence to the contrary, including evidence that Claymore "was a sophisticated investor who was fully informed of key assumptions . . . but failed to do its own basic due diligence."

As finders of fact, the jury and the trial court were required to weigh and determine the credibility of this evidence. We conclude that on this record, the contractual disclaimers did not preclude Claymore from establishing its justifiable reliance on Credit Suisse's misrepresentations. We decide Claymore's second issue against it.

## B. Amount of damages

In its final judgment, the trial court awarded "[d]amages, whether calculated as expectation damages, rescissory damages, or restitution, in the amount of $211,863,998.56 . . . ." In its third issue, Credit Suisse contends that the trial court erred by supplanting the jury's finding that an award of $40 million would fairly and reasonably compensate Claymore for the single injury it

suffered. Credit Suisse also argues that Claymore was not entitled to equitable relief because it had an adequate remedy at law.

In considering only Claymore's damages for fraud, the jury was instructed to limit its answer to "[t]he difference, if any, between what Plaintiff [Claymore] paid and the value of what Plaintiff received in the 2007 Lake Las Vegas Refinancing." This "out-of-pocket" measure, "to compensate plaintiffs for what they lost because of the fraud," is the applicable measure of damages for fraud under New York law. *Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 142, 75 N.E.3d 1159, 1163, 53 N.Y.S.3d 598, 602 (N.Y. 2017). Damages for fraud "must reflect 'the actual pecuniary loss sustained as the direct result of the wrong.'" *Norcast S.Ar.L. v. Castle Harlan, Inc.*, 147 A.D.3d 666, 667, 48 N.Y.S.3d 95, 97 (N.Y. App. Div. 2017) (quoting *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 1373, 646 N.Y.S.2d 76, 80 (N.Y. 1996)).

In breach of contract actions, in contrast, "'the nonbreaching party may recover general damages which are the natural and probable consequence of the breach.'" *Bi-Economy Mkt., Inc. v. Harlesyville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 192, 886 N.E.2d 127, 130, 856 N.Y.S.2d 505, 508 (N.Y. 2008) (quoting *Kenford Co. v. Cnty. of Erie*, 73 N.Y.2d 312, 319, 537 N.E.2d 176, 178, 540 N.Y.S.2d 1, 3–4, (N.Y. 1989)). "Special, or consequential damages, which 'do not so directly flow from the breach,' are also recoverable in limited circumstances." *Id.* (quoting *Am. List Corp. v. U.S. News & World Report*, 75 N.Y.2d 38, 43, 549 N.E.2d 1161, 1164, 550 N.Y.S.2d 590, 593 (N.Y. 1989)).

Rescissory damages are "the economic equivalent of rescission in a circumstance in which rescission is warranted, but not practicable." *Syncora Guar. Inc. v. Countrywide Home Loans, Inc.*, 36 Misc.3d 328, 343–44, 935 N.Y.S.2d 858, 869–70 (N.Y. Sup. Ct. 2012). Rescission is warranted

"where there is a breach of contract that is material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Lenel Sys. Int'l, Inc. v. Smith*, 106 A.D.3d 1536, 1537–38, 966 N.Y.S.2d 618, 620 (N.Y. App. Div. 2013) (internal quotations omitted); *see also Raymond Weil, S.A. v. Theron*, 585 F. Supp. 2d 473, 487–88 (S.D.N.Y. 2008) ("Absent fraud or mistake, rescission may be granted only when the breach goes to the root of the contract and defeats its very purpose."). "The effect of rescission is to declare a contract void from its inception and to put or restore the parties to status quo." *Lenel Sys. Int'l, Inc.*, 106 A.D.3d at 1537–38, 966 N.Y.S.2d at 620 (internal quotations omitted). Rescission is also "a viable remedy where one party pleads that it was fraudulently induced to enter into a contract." *GoSmile, Inc. v. Levine*, 81 A.D.3d 77, 82, 915 N.Y.S.2d 521, 525 (N.Y. App. Div. 2010).[7] Rescission is an equitable remedy that will not be granted unless the plaintiff lacks an adequate remedy at law. *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 330 (S.D.N.Y. 2000).

We conclude (1) the trial court did not abuse its discretion in determining that Claymore had no adequate remedy at law, and (2) the trial court was not limited to the amount found by the jury on Claymore's fraud claim. We discuss each conclusion in turn.

### 1.     Adequate legal remedy

Credit Suisse contends that Claymore failed to establish it had no adequate remedy at law, an essential element of its claim for rescissory damages. *See Babylon Assocs. v. Cnty. of Suffolk*, 101 A.D.2d 207, 215, 475 N.Y.S.2d 869, 874 (N.Y. App. Div. 1984) (where County had "adequate remedy at law, namely recovery of money damages," counterclaim for rescission and restitution

---

[7] *See also Hannon, Inc. v. Scott*, No. 02-10-00012-CV, 2011 WL 1833106, at *9 (Tex. App.—Fort Worth May 12, 2011, pet. denied) (mem. op.) ("Upon rescission, the rights and liabilities of the parties are extinguished; any consideration paid is returned, together with such further special damage or expense as may have been reasonably incurred by the party wronged; and the parties are restored to their respective positions as if no contract had ever existed.").

properly dismissed). Credit Suisse also argues that the trial court could only award equitable relief if it first concluded that Claymore's damages could not be determined with reasonable certainty or precision. Because the jury *did* calculate Claymore's damages precisely, Credit Suisse argues, the trial court's award of equitable relief was improper.

The trial court addressed rescissory damages in its conclusions of law:

30. After weighing all of the evidence and the equities, the Court finds that rescissory damages are appropriate because there is no measure available by which to estimate the value of [Credit Suisse]'s promise to review and approve the Appraisal with reasonable certainty or precision. The difficulty in estimating the value of [Credit Suisse]'s promise with reasonable certainty or precision has been caused by the conduct of Credit Suisse. Plaintiff has therefore been left without an adequate remedy at law. . . .

32. The Court further finds that it can substantially restore the status quo by returning the interests [Claymore] received in the LLV Litigation Trust and the Reorganized Debtor to [Credit Suisse] and awarding [Claymore] the net losses [it] suffered as a consequence of [its] investments in the Refinancing.

33. Even if this were not the case, the Court also finds that the requirement to restore the status quo in this case is relaxed because Credit Suisse is the only wrongdoer and any impediment to restoration is the fault of Credit Suisse.

34. As a result, Plaintiff is entitled to rescissory damages on its initial investment in the Refinancing in the amount of $215,773,287.95 (*see* PX2385).

The adequacy of Claymore's remedy at law was a question for the trial court. *Holubec v. Brandenberger*, 214 S.W.3d 650, 656 (Tex. App.—Austin 2006, no pet.). "An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief." *Noell v. City of Carrollton*, 431 S.W.3d 682, 712 (Tex. App.—Dallas 2014, pet. denied); *see also New York TRW Title Ins. v. Wade's Canadian Inn & Cocktail Lounge, Inc.*, 199 A.D.2d 661, 663, 605 N.Y.S.2d 139, 140 (N.Y. App. Div. 1993) (legal remedy deemed adequate if it is "plain and adequate and as certain, prompt, complete, and efficient to attain the ends of justice and its prompt administration as the remedy in equity") (quoting 55 N.Y. JUR. 2d, *Equity*, § 25 at 455).

Credit Suisse argues that the trial court had "no discretion to replace a jury award of damages with an equitable remedy," citing *Magi XXI, Inc. v. Stato Della Cita del Vaticano*, 22 F. Supp. 3d 195, 207 (E.D.N.Y. 2014). In that case, the parties had been involved in prior litigation involving "the same claim or nucleus of operative fact." *Id.* at 198. The prior litigation proceeded to a jury trial, but the trial court granted a directed verdict at the close of the plaintiff's case that was upheld on appeal. *Id.* at 200. In the subsequent litigation, the defendant filed a motion to dismiss the plaintiff's claims. *Id.* at 198. The court granted the motion, concluding that the plaintiff's fraud and breach of contract claims were barred by res judicata. *Id.* The court also granted the defendant's motion to dismiss the plaintiff's claim for rescission, but did not do so on the ground that the issue had already been decided in the prior jury trial, or on the ground that it lacked the authority to replace a jury award with equitable relief. *See id.* at 207. Instead, the court noted that the plaintiff had alleged money damages for the money it had paid to the defendants and for other losses. *Id.* The court explained that rescission is inappropriate where "damages appear adequate and it is impracticable to restore the status quo." *Id.* Concluding that the plaintiff had "put forward no reason why damages would not be an adequate remedy," the court dismissed the plaintiff's rescission claim. *Id.* In this case, in contrast, Claymore pleaded and offered evidence that damages would not be adequate.

Claymore offered evidence that its net investment losses exceeded $211 million. Claymore also offered evidence that it would not have invested in the refinancing transaction absent Credit Suisse's fraud. John Morgan testified for Claymore that the problems with the appraisal and Credit Suisse's actions with respect to the appraisal were important for him to know in making the decision to invest in the refinancing, and had he known those facts, he would not have recommended making the investment. Further, Claymore offered evidence that the value of the

underlying property was improperly inflated in the appraisal to exceed the amount of the loan. It also offered evidence that a syndicated loan in which the debt exceeded the value of the collateral was not marketable, so a comparable market value could not be determined for purposes of calculating money damages. In a case considering the availability of the equitable remedy of specific performance, the New York Court of Appeals stated that the "first factor affecting adequacy of damages" is "'the difficulty of proving damages with reasonable certainty.'" *Van Wagner Advertising Corp. v. S&M Enters.*, 67 N.Y.2d 186, 193, 492 N.E.2d 756, 760, 501 N.Y.S.2d 628, 632 (N.Y. 1986) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 360(a)). As we have explained, the trial court concluded that "there is no measure available by which to estimate the value of [Credit Suisse's] promise to review and approve the Appraisal with reasonable certainty or precision," and the difficulty in estimating that value was caused by the conduct of Credit Suisse. C.L. 30. And although the jury found that $40 million would "reasonably compensate" Claymore for its damages resulting from fraudulent inducement, neither party can attribute this amount to any specific evidence in the record.

In summary, evidence supports the trial court's determination that damages could not be determined with reasonable certainty and that rescission was an appropriate remedy. Consequently, the trial court's conclusion that Claymore had no adequate remedy at law is supported by the evidence and is not erroneous as a matter of law. *See Fulgham*, 349 S.W.3d at 158 (conclusions of law may not be reversed unless erroneous as matter of law).

### 2. Effect of jury's finding

Credit Suisse contends that although Claymore asserted different legal theories, Claymore sought recovery for only one harm, and the jury determined the damages resulting from that single harm. Credit Suisse argues that Claymore could not present evidence of its damages to the jury

and request a monetary award, and then claim that rescission was warranted because Claymore was not fully compensated for its losses.

However, beginning with its original pleading in this case, Claymore has sought rescissory damages: "Because rescission is impracticable, if not impossible, Plaintiff . . . seeks compensatory and/or rescissory damages in an amount to be proved at trial." (Plaintiff's Original Petition, Count One). As the parties and the trial court recognized, the availability and amount of equitable relief was a question for the trial court, not the jury. *See, e.g., State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979) ("Although a litigant has the right to a trial by jury in an equitable action, only ultimate issues of fact are submitted for jury determination. The jury does not determine the expediency, necessity, or propriety of equitable relief.").

Credit Suisse relies on *Barkley v. United Homes, LLC*, 848 F. Supp. 2d 248, 277 (E.D.N.Y. 2012), *aff'd*, 557 Fed. App'x. 22 (2d Cir. 2014), and *New Shows, S.A. de C.V. v. Don King Productions, Inc.*, No. 95 Civ. 8851(RPP), 1999 WL 553780 (S.D.N.Y. Jul. 29, 1999), *aff'd*, Nos. 99-9019, 9069, 2000 WL 352414 (2d Cir. Apr. 6, 2000) (unpublished disposition), 210 F.3d 355 (Table), in support of its argument that rescission is not warranted where the jury awarded damages. We conclude those cases are distinguishable.

In *Barkley*, purchasers of residential properties sued home renovation companies, mortgage lenders, and others for engaging in a fraudulent property-flipping scheme. *Id.* at 251. A jury found the defendants liable for fraud, deceptive practices, and conspiracy to commit fraud, and awarded compensatory and punitive damages. *Id.* at 252. In a post-trial motion, plaintiff Mary Lodge sought to rescind her mortgage in addition to recovery of the damages awarded by the jury. *Id.* The court recognized that Lodge was "not barred from seeking rescission of her mortgage merely because the jury ha[d] awarded money damages." *Id.* at 276 (citing N.Y. C.P.L.R. § 3002(e), providing that

in an action for rescission, a party may obtain "complete relief in one action," including rescission and damages). But rescission was not appropriate where the parties could not be restored to the status quo. *Id.* The court stated that "'[t]he rescission theory of damages cannot restore a plaintiff to a better position than he would have been in if the fraud had not occurred.'" *Id.* at 277 (quoting *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 49 n.22 (2d Cir. 1978), *amended*, Nos. 77-7104 & 77-7124, 1978 WL 4098 at *1 (2d Cir. May 22, 1978) (per curiam)). The court explained:

> In the instant action, Lodge does not seek to restore the status quo. Instead, Lodge asks for monetary damages and cancellation of her mortgage so that she will no longer have an obligation to pay the Bayview Defendants [the servicer and holder of her mortgage], all while keeping her house. This does not return Lodge and the Bayview Defendants to the respective positions they were in before the mortgage was entered into; rather, this leaves Lodge in a better position than that in which she would have been had the fraud not occurred.

*Id.*

In *New Shows*, the parties entered into an agreement to promote a boxing event. *New Shows*, 1999 WL 553780, at *1. New Shows subsequently sued its co-promoter Don King Productions, Inc. ("DKP") for breach of contract, claiming losses in connection with the event of $3.8 million. *Id.* at *1–2. A jury was instructed on benefit of the bargain damages and found that DKP's breach of contract caused New Shows $63,500 in damages. In a post-judgment motion, New Shows also sought to rescind the contract. The court denied the motion, concluding that New Shows failed to show it was entitled to rescission as a remedy for DKP's breach because (1) New Shows failed to demonstrate why the legal remedy was inadequate; (2) the status quo prior to the contract was not capable of being restored because the event that was the subject of the contract had taken place and was "impossible to undo"; and (3) New Shows did not establish that DKP's breaches were "material and willful, or, if not willful, so substantial and fundamental as to strongly defeat the object of the parties making the contract." *Id.* at *2–3 (internal quotations omitted).

In *Barkley*, rescission of Lodge's mortgage in addition to an award of damages would have placed Lodge in a better position than if the fraud had not occurred. *Barkley*, 848 F. Supp. 2d at 277. In *New Shows*, the plaintiff failed to demonstrate why the legal remedy of damages was inadequate. *New Shows*, 1999 WL 553780, at *2–3. However, neither of these circumstances has been established here. Under the trial court's judgment in this case, Claymore received back the amount it had loaned under the Credit Agreement. And as we have discussed, Claymore offered evidence that it had no adequate remedy at law.

Having obtained favorable findings from the jury on the fraud claim and from the trial court on the contract claim, Claymore could elect rescission as its remedy. *Dallas Farm Mach. Co. v. Reaves*, 307 S.W.2d 233, 238–39 (Tex. 1957) ("[I]t is well settled that one who is induced by fraud to enter into a contract has his choice of remedies. 'He may stand to the bargain and recover damages for the fraud, or he may rescind the contract, and return the thing bought, and receive back what he paid.'") (quoting *Blythe v. Speake*, 23 Tex. 429, 436 (1859)). New York law is similar; a party who establishes that a contract was induced by fraud may rescind the contract and return what was received, or may affirm the contract and sue for damages, among other remedies. *VisionChina Media Inc. v. Shareholder Representative Servs. LLC*, 109 A.D.3d 49, 56, 967 N.Y.S.2d 338, 343 (N.Y. App. Div. 2013) (citing and quoting *Wood v. Dudley*, 188 A.D. 136, 140, 176 N.Y.S. 494, 497–98 (N.Y. App. Div. 1919)).

Although Credit Suisse argues that a plaintiff may not elect an equitable remedy after obtaining a legal damages award, it cites no authority for the proposition. In support of its position, Claymore cites *Holt v. Robertson*, in which the trial court granted rescission of a real estate sales contract after a jury found damages totaling $29,855.49 for fraud and fraudulent inducement of the contract. *Holt v. Robertson*, No. 07-06-0220-CV, 2008 WL 2130420, at *5–6 (Tex. App.—

Amarillo May 21, 2008, pet. denied) (mem. op.). In *Holt*, the court of appeals determined that the trial court did not abuse its discretion in granting rescission. *Id.* The court also noted that "the trial court did not award and Appellees do not seek recovery of damages based upon the jury findings." *Id.* at *7. The court did not address the question whether the jury's damage award precluded a finding that there was no adequate remedy at law, but did state the principle that "a party must plead and prove the absence of an adequate remedy at law" to be entitled to rescission. *Id.* at *6. The court also explained that rescission is "used as a substitute for monetary damages when such damages would be inadequate." *Id.* at *7. We conclude that Claymore could elect the remedy of rescission after trial. *See also Sotheby's Inc. v. Minor*, No. 08 Civ. 7694(BSJ)(HBP), 2009 WL 3444887, at *4–5 (S.D.N.Y. Oct. 26, 2009) (collecting New York cases for proposition that although plaintiff may not be awarded relief under inconsistent theories, election of remedies is not required until after trial).

Credit Suisse also argues that Claymore was collaterally estopped[8] from seeking "an enhanced damages award" from the trial court because the jury already had determined the amount of money that would compensate Claymore for its damages. Credit Suisse contends (1) the jury and the trial court decided the same issue; (2) Claymore impermissibly relitigated the same issue; and (3) Credit Suisse's right to a jury trial was violated by the trial court's "judicial additur."

The jury determined Claymore's out-of-pocket damages resulting from fraudulent inducement by affirmative misrepresentation to be $40 million. Credit Suisse concedes that the jury's award of damages was based upon a different legal theory than the causes of action tried to the court. But Credit Suisse argues that Claymore only suffered a single injury, regardless of the

---

[8] The proponent of a collateral estoppel defense must establish that (1) the issue decided in the first action was actually litigated; (2) it was essential to that lawsuit's judgment; and (3) is identical to the issue in the pending action. *See Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 801–02 (Tex. 1992); *see also Martin v. U.S. Trust Co. of N.Y.*, 690 S.W.2d 300, 308 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (stating elements of collateral estoppel under New York law).

various legal theories advanced to redress it. Credit Suisse points to the language of the trial court's judgment that each of Claymore's claims "caused the same amount of damages, thus obviating a need for an election of remedies with respect to these claims," "whether calculated as expectation damages, rescissory damages, or restitution." Credit Suisse argues that the trial court and the jury made the same calculation, determining the difference "between what Plaintiff paid and the value of what Plaintiff received" in the transaction, but arrived at different answers.

Credit Suisse argues that the trial court is not "free to simply substitute its judgment for that of the jury," relying on several cases for the principle that a court may not employ additur to increase a jury's damages finding. *See Ponce v. Sandoval*, 68 S.W.3d 799, 805–06 (Tex. App.—Amarillo 2001, no pet.) ("the Rules of Civil Procedure do not provide for 'additur' by courts to increase the amount found as damages by juries in response to jury questions"); *Aztec Corp. v. Tubular Steel, Inc.*, 758 S.W.2d 793, 800 (Tex. App.—Houston [14th Dist.] 1988, no writ) (court of appeals declined to order additur of certain expenses, even though amounts were supported by witnesses' uncontroverted testimony, where jury could have disbelieved the witnesses); *Phi Van Cao v. Hardy*, 352 S.W.3d 218, 223–24 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (even where jury awards "completely random sum of money," appellate court has "no authority to employ additur"; only course of action is to grant new trial). But none of those cases involved different damage awards on different causes of action in a case that was bifurcated under rule of civil procedure 174(b). *See* TEX. R. CIV. P. 174(b) (court may order separate trial of any claim). Nor in those cases had the parties contractually waived their right to a jury trial, which led in this case to the trial court's ordering a separate jury trial under rule 174(b) on the sole issue of fraudulent inducement, with the remaining issues to be tried to the court.

Credit Suisse also cites section 13 of the Restatement (Second) of Judgments in support of its contention that even though final judgment was not rendered on the jury's verdict, the jury's damages finding must be given collateral estoppel effect. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 13 (res judicata applies only to "final judgment," but "'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect"). Regardless of whether that applies here, however, the Restatement also provides "exceptions to the general rule of issue preclusion":

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: . . .
>
> > (4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; . . . .

RESTATEMENT (SECOND) OF JUDGMENTS § 28 (1982).[9] To establish its claim for fraudulent inducement by affirmative misrepresentation, Claymore was required to prove each element of the claim by clear and convincing evidence. *See Basis PAC-Rim Opportunity Fund (Master) v. TCW Asset Mgmt. Co.*, 149 A.D.3d 146, 149, 48 N.Y.S.3d 654, 656 (N.Y. App. Div. 2017) (fraud claim requires proof by clear and convincing evidence as to each element of claim). The standard of proof for Claymore's claim for breach of contract, in contrast, was by a preponderance of the evidence. *See, e.g., Morgan v. Silvestri*, 31 Misc. 3d 1206(A) (unreported disposition), 927 N.Y.S.2d 817 (Table), 2011 WL 1260093, at *5 (N.Y. Sup. Ct. Apr. 4, 2011) (claim for fraud in the inducement had "substantially greater burden of proof" than preponderance of evidence

---

[9] The Restatement has been cited with approval by Texas courts when addressing issues of collateral estoppel. *See, e.g., SWEPI, L.P. v. Camden Res., Inc.*, 139 S.W.3d 332, 340 n.10 (Tex. App.—San Antonio 2004, pet. denied) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 28(4) in support of its conclusion that Texas Railroad Commission's determination of issue did not have collateral estoppel effect in subsequent suit; burden of proof was significantly heavier in initial action).

standard applicable to breach of contract claim). As a result, even if section 13 of the restatement would allow application of collateral estoppel here, section 28(4) would provide an exception.[10]

We conclude that the trial court was not limited to the jury's award of damages on Claymore's fraudulent inducement claim in determining appropriate equitable relief on the claims for which the parties waived their right to a jury trial. We decide Credit Suisse's third issue against it.

## III. Claymore's Issues

### A. Prejudgment interest

The trial court's judgment awards Claymore prejudgment interest from September 16, 2011, to the date of judgment. In its first cross-issue, Claymore contends that New York law requires prejudgment interest to begin accruing on June 22, 2007. Claymore relies on New York Civil Practice Law and Rules, sections 5001(a) and (b):

> (a) **Actions in which recoverable.** Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.
>
> (b) **Date from which computed.** Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

N.Y. C.P.L.R. 5001 (McKinney, Westlaw through L.2017, chs. 1–402).

---

[10] Credit Suisse also cites two cases for the proposition that an issue resolved by a jury in the first phase of a trial "may be held conclusive" in the second phase of the trial, *King v. Houston Indep. Sch. Dist.*, No. H-83-2034, 1987 WL 12262, at *3 (S.D. Tex. Jun. 4, 1987), *aff'd sub nom. Fojt v. Houston Indep. Sch. Dist.*, 865 F.2d 1264 (5th Cir. 1989) (Table)*, and *Avery v. Whatley*, 670 A.2d 922, 926 (Me. 1996). In *King*, the court applied federal civil rights law in which "a prior jury determination in the § 1983 action of the core issue of discrimination precludes by collateral estoppel a contrary result in the Title VII bench trial." *King*, 1987 WL 12262, at *3. In *Avery*, the Supreme Judicial Court of Maine examined case law from jurisdictions other than Texas or New York to determine whether under Maine law, a trial court would be bound by a jury's finding of undue influence when ruling on a request for equitable relief. *Avery*, 670 A.2d at 926. We conclude that these cases are inapposite to the questions of New York and Texas state law presented here.

The record reflects that the September 16, 2011 date used in the trial court's judgment is the date on which the parties entered into an extension of their tolling agreement. The June 22, 2007, date urged by Claymore is the date on which the parties entered into the Credit Agreement. Claymore contends that Credit Suisse breached the Credit Agreement on that date because it had failed to review and approve a Qualified Appraisal, which was a condition precedent to Claymore's funding of the refinancing. Claymore argues that the "earliest ascertainable date" its causes of action for breach of contract and fraud existed was the date the parties entered into the Credit Agreement.

The trial court awarded Claymore rescissory damages, an equitable remedy. *See Lenel Sys. Int'l, Inc.*, 106 A.D.3d at 1537, 966 N.Y.S.2d at 620. Consequently, the award of interest, the rate, and the date from which interest was computed were within the trial court's discretion. N.Y. C.P.L.R. 5001(a). We decide Claymore's first cross-issue against it.

B.      Unjust enrichment

In its second issue, Claymore contends that the trial court's judgment should be modified to add an award of $7,050,000 plus interest for unjust enrichment, in accordance with the trial court's findings and conclusions. The trial court signed its amended findings of fact and conclusions of law on October 31, 2015, after it rendered judgment on September 15, 2015. In its findings and conclusions, the trial court concluded that Claymore proved the elements of an unjust enrichment claim by a preponderance of the evidence. C.L. 70. The trial court also concluded that it would be inequitable for Credit Suisse to retain the net amount of $7,050,000 in fees it deducted from the proceeds of the refinancing. C.L. 73.

The judgment, as we have discussed, awarded Claymore $211,863,998.56 in rescissory damages, representing Claymore's entire net investment in the refinancing, but did not award the

$7,050,000 sought by Claymore for unjust enrichment. Claymore argues that the subsequent findings of fact and conclusions of law are controlling and require this Court to modify the judgment to include this award. Claymore relies on *City of Laredo v. R. Vela Exxon, Inc.*, 966 S.W.2d 673, 678 (Tex. App.—San Antonio 1998, pet. denied), for the proposition that "[f]indings of fact and conclusions of law filed after a judgment are controlling if there is any conflict between them."

In *In re Marriage of Edwards*, 79 S.W.3d 88, 100–01 (Tex. App.—Texarkana 2002, no pet.), however, the court distinguished *City of Laredo* where the trial court's conclusions of law, rather than its findings of fact, conflicted with the judgment. The court relied instead on cases in which appellate courts disregarded conclusions of law that conflicted with the judgment. *Id.* (citing cases). The court explained, "[t]his result follows logically from rule 299, which makes findings of fact the basis of the judgment on all grounds of recovery or defense. The principle function of conclusions of law is to indicate to the appellate court the theory on which the case was tried." *Id.* (citations omitted). Further, we are required to reconcile conflicts between conclusions of law and the judgment. *Grossnickle v. Grossnickle*, 935 S.W.2d 830, 841 (Tex. App.—Texarkana 1996, writ denied).

In New York and in Texas, "The granting or denial of equitable relief lies within the sound discretion of the trial court . . . ." *Mathews v. First Citizens Bank*, 374 S.W.2d 794, 797 (Tex. Civ. App.—Dallas 1963, writ ref'd n.r.e.); *Wagner & Brown, Ltd.*, 282 S.W.3d at 428–29 ("'[T]he expediency, necessity, or propriety of equitable relief' is for the trial court, and its ruling is reviewed for an abuse of discretion.") (quoting *Tex. Pet Foods, Inc.*, 591 S.W.2d at 803); *Lockwood v. Lockwood*, 148 Misc. 2d 874, 876, 563 N.Y.S.2d 377, 378–79 (N.Y. Sup. Ct. 1990)

(court acting in equitable capacity is permitted to exercise discretion in determining whether or not, on facts presented, relief should be granted, and if so, extent of relief).

In addition, New York law ordinarily precludes awards of damages for unjust enrichment where the matter is governed by contract. *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 516 N.E.2d 190, 193, 521 N.Y.S.2d 653, 656 (N.Y. 1987). Claymore argues that it was not a party to the contract between Credit Suisse and the borrowers under which the $7,050,000 in fees arose, and because it was not a party to that contract, it is entitled to recover those damages. The court in *Allenby, LLC*, however, held that a similar agreement between Credit Suisse and other borrowers barred the plaintiff lenders' unjust enrichment claims. *Allenby, LLC*, 134 A.D.3d at 579, 25 N.Y.S.3d at 4. The *Allenby* court explained, "[i]t is of no moment that the contracts are between defendants and the nonparty borrowers/real estate developers, not between defendants and plaintiffs." *Id.* (citing *Feigen v. Advance Capital Mgmt. Corp.*, 150 A.D.2d 281, 283, 541 N.Y.S.2d 797 (1989) (*appeal dism'd in part and denied in part*, 74 N.Y.2d 874 (N.Y. 1989)).

In any event, the equitable relief, if any, to be awarded Claymore was within the trial court's discretion. Claymore submitted a proposed judgment that included the $7,050,000 award for unjust enrichment. The trial court rejected this proposal by signing a judgment that did not include an award for unjust enrichment. Although the trial court's findings and conclusions were signed subsequent to the judgment and included conclusions favorable to Claymore on unjust enrichment, the total amount of damages awarded Claymore in the judgment was within the trial court's discretion. We decide Claymore's second issue against it.

## CONCLUSION

We affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

151463F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH AND CREDIT SUISSE SECURITIES (USA) LLC, Appellants

No. 05-15-01463-CV      V.

CLAYMORE HOLDINGS, LLC, Appellee

On Appeal from the 134th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-13-07858-G.
Opinion delivered by Justice Lang-Miers; Justices Brown and Boatright, participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Claymore Holdings, LLC recover its costs of this appeal and the full amount of the trial court's judgment from appellants Credit Suisse AG, Cayman Islands Branch and Credit Suisse Securities (USA) LLC and from Westchester Fire Insurance Company as surety on appellants' supersedeas bond.

Judgment entered this 20th day of February, 2018.