[48 NYS3d 654]

BASIS PAC-RIM OPPORTUNITY FUND (MASTER) et al., Respondents, v TCW ASSET MANAGEMENT COMPANY, Appellant.

First Department, March 2, 2017

## APPEARANCES OF COUNSEL

*Gibson, Dunn & Crutcher LLP*, New York City (*Christopher M. Joralemon, Peter M. Wade, Diana M. Feinstein* and *Mark A. Kirsch* of counsel), for appellant.

*Lewis Baach PLLC*, New York City (*Bruce R. Grace* of counsel), for respondents.

## OPINION OF THE COURT

KAPNICK, J.

Plaintiffs Basis PAC-Rim Opportunity Fund (Master) and Basis Yield Alpha Fund (Master) (together Basis) are two Australian-based Cayman Islands hedge funds. Defendant TCW Asset Management Company (TCW) is an investment advisor that served as the collateral manager for Dutch Hill II (Dutch Hill), a $400 million collateralized debt obligation (CDO) investment. Dutch Hill was created as an investment vehicle used for the purpose of taking a net long position on extremely risky Residential Mortgage-Backed Securities (RMBS). Nonparty Deutsche Bank was the investment banker, structurer, underwriter, and placement agent for Dutch Hill.

Deutsche Bank marketed the Dutch Hill notes to potential investors and negotiated the price of the notes. As the collateral manager, TCW selected the assets for the Dutch Hill portfolio. The primary investment strategy for Dutch Hill consisted of pairing long positions in below investment-grade tranches of RMBS, with short positions (via credit default swaps) in higher-rated tranches of the same bonds. The theory was that this strategy would significantly offset any declines in value in the long positions (the below investment-grade tranches) with gains in the corresponding credit hedge (the higher-rated tranches of the same bonds).

In January 2007, Deutsche Bank solicited Basis's investment in Dutch Hill. Part of this solicitation included a marketing book that outlined the general structure and preliminary projections for an equity investment in Dutch Hill. TCW marketed itself as having the ability to identify which risky RMBS were likely to succeed and which were likely to fail. In other words, TCW marketed itself as having the ability to select the less risky RMBS from what was then known to be the risky RMBS market. Throughout the first half of 2007, certain individuals at TCW expressed the view that portions of the subprime mortgage market were experiencing deepening deterioration, including certain types of loans originated in 2006 and certain RMBS bonds issued in 2006. However, it was TCW's view that selective portions of the subprime RMBS market remained viable and provided a fundamentally sound asset class. Prior to investing in Dutch Hill, Basis was also aware that the RMBS subprime market was becoming increasingly volatile in the first half of 2007.

Nonetheless, on May 2, 2007, Basis purchased over $27 million of Dutch Hill's class D-3 notes, which were rated BB, the riskiest portions of the investment vehicle. By the end of July 2007, in the midst of the housing market crisis, Dutch Hill notes had lost most of their value.

Basis commenced this action on or about November 21, 2012, asserting causes of action for fraudulent inducement, fraudulent concealment, negligent misrepresentation, breach of contract-third party beneficiary, and unjust enrichment.[1] On or about October 15, 2013, Basis filed an amended complaint asserting only the fraud claims. TCW moved for summary judgment, arguing that Basis was unable to meet its burden of proving loss causation, an element of fraud. The motion court denied TCW's motion for summary judgment, finding issues of fact as to loss causation.

Although the motion court aptly articulated the concept of loss causation, the court erred in its application. Both the motion court's decision and Basis's argument on appeal conflate the concept of loss causation with materiality, falsity and reasonable reliance—other elements of fraud. Once TCW made a prima facie showing that Basis's loss was not due to any fraud-

---

**1.** In February 2013, TCW moved to dismiss, and on September 10, 2013, the court granted the motion to the extent of dismissing the claims for negligent misrepresentation, breach of contract, and unjust enrichment. To the extent appealed from, this Court affirmed (124 AD3d 538 [1st Dept 2015]).

ulent statements or omissions by TCW, the burden then shifted to Basis to raise an issue of fact. Basis did not meet its burden and TCW's summary judgment motion should have been granted.

A fraud claim requires "proof by clear and convincing evidence" as to each element of the claim (*Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d 330, 350 [1999]). One such element is causation, and to establish causation, plaintiffs must prove both that "defendant's misrepresentation induced plaintiff[s] to engage in the transaction in question (transaction causation) and that the misrepresentations directly caused the loss about which plaintiff[s] complain (loss causation)" (*Laub v Faessel*, 297 AD2d 28, 31 [1st Dept 2002]). "Transaction causation is akin to reliance, and requires only an allegation that 'but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction'" (*Lentell v Merrill Lynch & Co., Inc.*, 396 F3d 161, 172 [2d Cir 2005], *cert denied* 546 US 935 [2005]).[2]

"Loss causation 'is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff'" (*id.* at 172). To establish loss causation a plaintiff must prove that the "'*subject* of the fraudulent statement or omission was the cause of the actual loss suffered'" (*id.* at 173). Moreover,

> "'when the plaintiff's loss coincides with a market-wide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases', and a plaintiff's claim fails when 'it has not . . . proven . . . that its loss was caused by the alleged misstatements as opposed to intervening events'" (*id.* at 174, quoting *First Nationwide Bank v Gelt Funding Corp.*, 27 F3d 763, 772 [2d Cir 1994]).

Indeed, when an investor suffers an investment loss due to a "market crash . . . of such dramatic proportions that [the] losses would have occurred at the same time and to the same extent regardless of the alleged fraud," loss causation is lacking (*see Loreley Fin. [Jersey] No. 3 Ltd. v Wells Fargo Sec., LLC*, 797 F3d 160, 186-187 [2d Cir 2015]). Although the *Lore-*

---

**2.** TCW did not seek summary judgment on transaction causation and does not raise a transaction causation argument on appeal. Therefore, the only issue before this Court concerns loss causation.

*ley* case concerned a motion to dismiss and thus focused on pleading requirements for loss causation, that court did note that "[w]hether [p]laintiffs can prove [their] allegations—and whether defendants in turn can proffer evidence that the CDOs would have collapsed regardless, due to the larger crash in the [mortgage-backed securities] market—are evidentiary matters for later phases of this lawsuit" (*id.* at 188).

Here, TCW has proffered evidence that Dutch Hill would have collapsed regardless of the assets selected by TCW due to the housing market crash—a "marketwide phenomenon causing comparable losses to other investors" (*Lentell v Merrill Lynch & Co., Inc.*, 396 F3d at 174). TCW submitted an expert affidavit in which the expert opined that even if TCW had selected assets that complied with the Dutch Hill model and comported with TCW's representations to Basis, Basis would still have suffered a loss due to an external and intervening cause—namely, the housing market crash. The expert conducted a common form of regression analysis to "analyze the effect that macroeconomic factors had on pools of collateral consistent with Dutch Hill II's core asset portfolio . . . in order to create a benchmark against which to compare the performance of the loan pools analyzing the collateral in Dutch Hill II." The TCW expert found that "any CDO backed by pools of loans consistent with Dutch Hill II's core asset portfolio would have suffered losses as a consequence of the general market downturn." Ultimately, the expert concluded that Basis's "economic losses were caused by unforeseeable macroeconomic events."

In response, Basis failed to raise an issue of fact. Despite having pleaded in its amended complaint that TCW allowed Dutch Hill to contain "toxic securities" that "performed significantly worse than a benchmark portfolio comprised of similar mortgage-backed bonds," Basis failed to produce any evidence that under the circumstances here involving the collapse of the RMBS market, it was TCW's misrepresentations, rather than market forces, that caused the investment losses (*see e.g. Laub v Faessel*, 297 AD2d at 30-32). Instead, Basis's expert, in response, provided a general overview of the role of various players involved in CDO transactions as well as his opinion and interpretation of internal TCW emails discussing the investment vehicle at issue and the health of the market. However, Basis's expert failed to address or even discuss Basis's argument that no suitable collateral then existed and

that TCW lied about its existence, and that this misrepresentation caused Basis to lose their entire investment. Basis's expert did not analyze the quality or performance of the assets purchased by TCW. Basis's expert's conclusory assessment of the economic damages suffered by Basis addressed only transaction causation, stating that "[i]n the absence of . . . fraudulent inducement and concealment, [p]laintiffs aver that Basis would not have invested [$27,000,000 plus] . . . and would therefore not have suffered this total loss." This was insufficient to raise an issue of fact as to loss causation.

We do not mean to suggest that all cases in which a plaintiff alleges fraud will be unable to survive summary judgment in the event of a market collapse. However, in this case, it is Basis's complete failure to meet its burden on the issue of loss causation that compels our decision.

Accordingly, the order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered on or about October 19, 2015, which, to the extent appealed from, denied TCW's motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.

FRIEDMAN, J.P., RENWICK, FEINMAN and GISCHE, JJ., concur.

Order, Supreme Court, New York County, entered on or about October 19, 2015, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.