Aᴍʙᴀᴄ Aꜱꜱᴜʀᴀɴᴄᴇ Cᴏʀᴘᴏʀᴀᴛɪᴏɴ et al., Appellants-Respondents, v Cᴏᴜɴᴛʀʏᴡɪᴅᴇ Hᴏᴍᴇ Lᴏᴀɴꜱ, Iɴᴄ., et al., Respondents-Appellants, et al., Defendant.

First Department, May 16, 2017

84

**APPEARANCES OF COUNSEL**

*Patterson Belknap Webb & Tyler LLP*, New York City (*Peter W. Tomlinson, Harry Sandick* and *Robert P. LoBue* of counsel), for appellants-respondents.

*Simpson Thacher & Bartlett LLP*, New York City (*Joseph M. McLaughlin, Shannon K. McGovern* and *David J. Woll* of counsel), and *Goodwin Procter LLP*, New York City (*Brian D. Hail* of counsel), for respondents-appellants.

*Orrick, Herrington & Sutcliffe LLP*, New York City (*Richard A. Jacobsen* of counsel), for the Securities Industry and Financial Markets Association, amicus curiae.

*Axinn Veltorp & Harkrider LLP*, New York City (*Donald W. Hawthorne* of counsel), for the Association of Financial Guaranty Insurers, amicus curiae.

## OPINION OF THE COURT

RICHTER, J.P.

In this action, Ambac, a financial guaranty insurer, seeks to hold Countrywide liable in connection with 17 residential mortgage-backed securitizations sponsored by Countrywide.[1] Upon Countrywide's application, Ambac issued unconditional and irrevocable insurance policies for the transactions, guaranteeing the payments of principal and interest to the securitizations' investors. In its complaint, Ambac alleges, inter alia, that (i) Countrywide breached various contractual representations and warranties relating to the loans and its business practices; and (ii) Countrywide fraudulently induced Ambac to issue the insurance policies by making false statements about Countrywide's operations and the loans. Both Ambac and Countrywide sought summary judgment on a number of issues. The motion court granted in part and denied in part each of the parties' motions. Both parties now appeal.

We agree with Countrywide that Ambac is required to prove all of the elements of its fraudulent inducement claim, including justifiable reliance and loss causation. The elements of a fraud cause of action are long-settled. To establish fraud, a plaintiff must show "a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" (*Pasternack v Laboratory Corp. of Am. Holdings*, 27 NY3d 817, 827 [2016] [internal quotation marks omitted; alteration in original]; *see Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009]).

The element of justifiable reliance is "essential" to any fraud claim (*Basis Yield Alpha Fund Master v Morgan Stanley*, 136 AD3d 136, 140 [1st Dept 2015]; *see Danann Realty Corp. v*

---

1. Plaintiffs, Ambac Assurance Corporation and the Segregated Account of Ambac Assurance Corporation, are collectively referred to as Ambac. The Countrywide defendants are collectively referred as Countrywide.

*Harris*, 5 NY2d 317, 322 [1959] [it is a "fundamental precept" that reliance must be justifiable in order to state a cause of action for fraud]). The Court of Appeals recently reaffirmed, in a fraud action brought by a financial guaranty insurer like Ambac here, the necessity of proving justifiable reliance (*see ACA Fin. Guar. Corp. v Goldman, Sachs & Co.*, 25 NY3d 1043, 1044 [2015] ["To plead a claim for fraud in the inducement . . . , (a) plaintiff must allege facts to support the claim that it justifiably relied on the alleged misrepresentations"]).

A plaintiff asserting a fraud claim must also "demonstrate that a defendant's misrepresentations were the direct and proximate cause of the claimed losses" (*Vandashield Ltd v Isaacson*, 146 AD3d 552, 553 [1st Dept 2017] [internal quotation marks omitted]). "To establish causation, [a] plaintiff must show both that [the] defendant's misrepresentation induced [the] plaintiff to engage in the transaction in question (transaction causation) and that the misrepresentations directly caused the loss about which [the] plaintiff complains (loss causation)" (*Laub v Faessel*, 297 AD2d 28, 31 [1st Dept 2002]). "Loss causation is the fundamental core of the common-law concept of proximate cause" and "[a]n essential element" of a fraud claim (*id.*). This Court has repeatedly reaffirmed this principle (*see e.g. Basis PAC-Rim Opportunity Fund [Master] v TCW Asset Mgt. Co.*, 149 AD3d 146 [1st Dept 2017]; *Gregor v Rossi*, 120 AD3d 447, 448 [1st Dept 2014]; *Nam Tai Elecs., Inc. v UBS PaineWebber Inc.*, 46 AD3d 486, 488 [1st Dept 2007]; *Water St. Leasehold LLC v Deloitte & Touche LLP*, 19 AD3d 183, 185 [1st Dept 2005], *lv denied* 6 NY3d 706 [2006]).

■ There is no merit to Ambac's contention that Insurance Law § 3105 dispenses with the common-law requirement of proving justifiable reliance and loss causation. Nor can that statute be used affirmatively as a basis to recover monetary damages. Insurance Law § 3105 provides that a material misrepresentation "shall avoid [a] contract of insurance" and "defeat recovery thereunder" (Insurance Law § 3105 [b] [1]). This Court recently observed that "Insurance Law § 3105 does not, by its terms, create a cause of action, but merely codifies common-law [insurance] principles" (*CIFG Assur. N. Am., Inc. v J.P. Morgan Sec. LLC*, 146 AD3d 60, 68 [1st Dept 2016];[2] *see* Kaplan & Gross, Commentaries on the Revised Insurance Law

---

2. In *CIFG*, we addressed the limited question of whether a certain entity was an "applicant for insurance" within the meaning of Insurance Law § 3105 (*see* 146 AD3d at 66). The parties there did not raise the issue presented here

of New York § 149 at 338 [1940] [predecessor statute to section 3105 "restates generally, . . . in codified form, common law principles long established in the field of insurance"]).

At the outset, we note that, in its complaint, Ambac does not even reference Insurance Law § 3105, and pleads only common-law fraudulent inducement. Nevertheless, Ambac contends that its fraud claim is "informed" by that statute. By its express terms, Insurance Law § 3105 has no applicability here. It merely permits an insurer, in the event of a material misrepresentation, to either "avoid [a] contract of insurance" (i.e., pursue the remedy of rescission) or "defeat recovery" under the insurance contract (i.e., defeat an insured's claim for payment) (Insurance Law § 3105 [b] [1]; see 128 Hester LLC v New York Mar. & Gen. Ins. Co., 126 AD3d 447, 447 [1st Dept 2015] ["a material misrepresentation made at the time an insurance policy is being procured may lead to a policy being rescinded and/or avoided"]).

Cases applying Insurance Law § 3105 arise in the context of either a declaratory judgment action by an insurer seeking rescission of an insurance policy or an insurer asserting a defense to an insured's claim for payment under the policy (see e.g. Arch Specialty Ins. Co. v Kam Cheung Constr., Inc., 104 AD3d 599 [1st Dept 2013]; Rampersant v Nationwide Mut. Fire Ins. Co., 71 AD3d 972 [2d Dept 2010]; Kiss Constr. NY, Inc. v Rutgers Cas. Ins. Co., 61 AD3d 412 [1st Dept 2009]; Vebeliunas v American Natl. Fire Ins. Co., 156 AD2d 555 [2d Dept 1989]). Here, Ambac seeks neither to rescind the policies, which are unconditional and irrevocable, nor to defeat a claim by an insured for payment. Instead, Ambac seeks to assert Insurance Law § 3105 as an affirmative claim seeking monetary damages. Under these circumstances, Insurance Law § 3105 is not applicable.[3]

Furthermore, Insurance Law § 3105 contains no language suggesting that the legislature intended to relax the well-settled elements of a common-law fraud cause of action. Statutes in derogation of the common law must be strictly construed (see Artibee v Home Place Corp., 28 NY3d 739, 748

of whether that statute could be used as an affirmative basis to pursue monetary damages.

3. We recognize that MBIA Ins. Corp. v Countrywide Home Loans, Inc. (105 AD3d 412 [1st Dept 2013]) interpreted Insurance Law § 3105 differently and found that the plaintiff was not required to establish loss causation to prevail on its fraud claim. We decline to follow that part of the decision.

[2017]). "The common law is never abrogated by implication, but on the contrary it must be held no further changed than the clear import of the language used in a statute absolutely requires" (*Gottlieb v Kenneth D. Laub & Co.*, 82 NY2d 457, 465 [1993], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 301 [b]). Here, the words "fraud," "justifiable reliance" and "causation" appear nowhere in the statute. Nor does Ambac cite to any statement of legislative intent or legislative history indicating that Insurance Law § 3105 was intended to alter the essential elements of a fraud claim.[4]

■ The court correctly found that Ambac is not entitled to damages amounting to all claims payments it made or will make under the policies, regardless of whether they arise from a breach or misrepresentation. Although Ambac describes the relief it seeks as compensatory damages, it is no different from rescissory damages to which Ambac is not entitled (*see MBIA Ins. Corp.*, 105 AD3d at 412 [precluding financial guaranty insurer that has issued irrevocable policies from obtaining rescissory damages]; *Assured Guar. Mun. Corp. v RBS Sec., Inc.*, 2014 WL 1855766, \*2, 2014 US Dist LEXIS 63811, \*4-5 [SD NY, May 8, 2014, No. 13 Civ. 2019 (JGK)] ["The plaintiff cannot escape the language of its pleadings by labeling the rescissory damages it seeks as 'compensatory damages' "]).

We are persuaded by the arguments made by amicus curiae Securities Industry and Financial Markets Association that sound policy reasons support our conclusion. Ruling otherwise would inequitably allow Ambac to recoup the money it paid out for loans that complied with all warranties, and for which there were no misrepresentations, but which resulted in default due to the housing market collapse or other risks Ambac insured against. By issuing the irrevocable insurance policies, Ambac accepted the risk that an economic downturn could cause the loans to default and trigger its obligation to pay.

■ The court improperly found that the "repurchase protocol" is not Ambac's sole remedy for its claims of breaches of various contractual representations and warranties. Section 2.01 (l) of the agreements broadly provides that "the remedy with respect to *any defective Mortgage Loan . . . shall be limited* to [the

---

4. For the same reasons, Insurance Law § 3106, which allows an insurer, under certain circumstances, to "avoid an insurance contract" and "defeat recovery thereunder" for a breach of warranty (§ 3106 [b]), is not applicable to Ambac's breach of warranty causes of action, and does not alter the elements of a common-law breach of contract claim.

repurchase protocol]" (emphasis added). The plain language of this provision indicates that the repurchase protocol applies to a breach of any representation or warranty relating to defective loans, and not just those specifically incorporated into section 2.01 (l). Ambac cannot avoid the consequences of the sole remedy provision by relying on what it terms "transaction-level" representations about Countrywide's operations and financial condition, because the heart of Ambac's lawsuit is that it was injured due to a large number of defective loans (*see Assured Guar. Corp. v EMC Mtge., LLC*, 39 Misc 3d 1207[A], 2013 NY Slip Op 50519[U], *4-6 [Sup Ct, NY County 2013]). Ambac's reliance on *Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc.* (133 AD3d 96 [1st Dept 2015]) is unavailing because the sole remedy provision in that case was narrower than the one here (*id*. at 101).

The motion court should not have dismissed Ambac's sixth cause of action to the extent it seeks reimbursement of certain claims payments. The plain language of section 3.03 (b) of the relevant agreements entitles Ambac to "reimbursement from Countrywide" and "full recourse against Countrywide" for claims paid as a result of Countrywide's failure to abide by the repurchase protocol (*see Syncora Guar. Inc. v EMC Mtge., LLC*, 39 Misc 3d 1211[A], 2013 NY Slip Op 50569[U], *4-6 [Sup Ct, NY County 2013]). Section 3.03 (b) makes clear that the sole remedy provision does not apply to such reimbursement claims.

However, the court correctly found that section 3.03 (c) does not evince an "unmistakably clear" intent to permit Ambac to seek reimbursement for attorneys' fees incurred in its litigation against Countrywide (*Hooper Assoc. v AGS Computers*, 74 NY2d 487, 492 [1989]). It cannot be said that the language in that section is "exclusively or unequivocally referable to claims between the parties themselves or support[s] an inference that [Countrywide] promised to indemnify [Ambac] for counsel fees in an action on the [insurance] contract[s]" (*id.*; *see Gotham Partners, L.P. v High Riv. Ltd. Partnership*, 76 AD3d 203, 206 [1st Dept 2010], *lv denied* 17 NY3d 713 [2011]).

The court erred in interpreting the "No Default" and "No Material Monetary Default" representations and warranties, as a matter of law, to include borrower misrepresentation. "[T]he better course is to hold a trial to inquire into and develop the facts to clarify the relevant legal principles and their application to" these representations and warranties (*Bear Stearns Mtge. Funding Trust 2007-AR2 v EMC Mtge. LLC*,

2014 WL 2469668, *2 ¶ 6 [Del Ch, June 2, 2014, No. 6861-VCL]). Similarly, we find that disputed issues of fact exist with respect to whether the "Title Insurance" representation and warranty was intended to apply to every loan, including the 1,311 loans under $100,000, and as to whether Countrywide satisfied this representation and warranty with respect to certain loans. Likewise, Ambac has not shown, as a matter of law, that 85 "stated-value loans" were subject to the "Qualified Appraiser" representation and warranty.

Finally, the court correctly found that Countrywide failed to present sufficient evidence on its summary judgment motion to establish that Ambac's alleged purchase of discounted bonds in the securitizations mitigated its losses. In the absence of a more complete record, we decline to render what would essentially be an advisory opinion as to whether, if Countrywide obtains further information about Ambac's alleged purchase of these bonds, it can present this evidence at trial.

Accordingly, the orders of the Supreme Court, New York County (Eileen Bransten, J.), entered on or about October 27, 2015, which granted in part and denied in part plaintiffs' and the Countrywide defendants' respective motions for summary judgment, should be modified, on the law, to the extent indicated herein, and otherwise affirmed, without costs.

MANZANET-DANIELS, GISCHE, WEBBER and KAHN, JJ., concur.

Orders, Supreme Court, New York County, entered on or about October 27, 2015, modified, on the law, to the extent indicated herein, and otherwise affirmed, without costs.