MBIA Ins. Corp. v Credit Suisse Sec. (USA) LLC (2018 NY Slip Op 06060)





MBIA Ins. Corp. v Credit Suisse Sec. (USA) LLC


2018 NY Slip Op 06060


Decided on September 13, 2018


Appellate Division, First Department


Manzanet-Daniels, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 13, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick,J.P.
Sallie Manzanet-Daniels
Richard T. Andrias
Cynthia S. Kern
Jeffrey K. Oing, JJ.


603751/09 

[*1]MBIA Insurance Corp., Plaintiff-Appellant-Respondent,
v
Credit Suisse Securities (USA) LLC, et al., Defendants-Respondents-Appellants, Select Portfolio Servicing, Inc., Defendant.



Cross appeals from the order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered March 31, 2017, which, insofar as appealed from as limited by the briefs, granted defendants' motion for summary judgment dismissing the fraudulent inducement claim, denied so much of plaintiff's motion for summary judgment as sought a ruling that an insurer does not have to prove loss causation in connection with a fraudulent inducement claim, granted so much of plaintiff's motion as sought a ruling on the meaning of the "No Monetary Default" representation and the "Mortgage Loan Schedule" representation in the Pooling and Service Agreement for the subject residential mortgage-backed securitization transaction, and denied plaintiff's motion to supplement the record in opposition to defendants' motion.




Patterson Belknap Webb & Tyler LLP, New York (Erik Haas and Catherine A. Williams of counsel), and Kasowitz Benson Torres LLP, New York (Marc E. Kasowitz and Kenneth R. David of counsel), for appellant-respondent.
Orrick, Herrington & Sutcliffe LLP, New York (Barry S. Levin, John Ansbro, Richard A. Jacobsen and Paul F. Rugani of counsel), for respondents-appellants.



MANZANET-DANIELS, J.


This appeal concerns the propriety of the motion court's dismissal of plaintiff's (MBIA) fraudulent inducement claim and concomitant ruling that MBIA is required to prove loss causation as an element of its fraud claim.
In 2007, defendant DLJ Mortgage Capital Inc. (DLJ), as sponsor, amassed a loan "pool" comprised of over 15,000 second- lien residential mortgage loans with an aggregate outstanding principal balance of approximately $900 million, which was then transferred to a trust, known as the Home Equity Mortgage Trust 2007-2 (HEMT 2007-2), formed by defendant Credit Suisse Securities (USA) LLC. Credit Suisse then served as the underwriter of the mortgage loan pool, and marketed residential mortgage-backed securities to investors. Credit Suisse solicited MBIA, a monoline insurance company, to issue an irrevocable financial guaranty insurance policy guaranteeing payments of interest and principal to purchasers of the securities in the event that the pool of loans in the trust did not generate sufficient income to cover the payments.
After having an opportunity to perform due diligence and evaluate the transaction's risks,[FN1] MBIA issued a $767 million unconditional and irrevocable insurance policy on HEMT 2007-2. The deal documents contained a number of representations and warranties (R & W). The representations at issue here are the "No Monetary Default" representation (No Monetary Default Rep) and the "Mortgage Loan Schedule" representation (MLS Rep). The former provided that
"[t]here is no material monetary default existing under any Mortgage or the related Mortgage Note and there is no material event that, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration under the Mortgage or the related Mortgage Note...."
The latter provided that "[t]he information set forth in the Mortgage Loan Schedule . . . is complete, true and correct in all material respects as of the Cut-off Date." The attached schedule contained information about the transaction loans, including debt-to-income ratio, the borrowers' credit scores, and the original principal balances.
The insurance agreement limited MBIA's remedy for breach of the Pooling and Service Agreement's (PSA) warranties to the "repurchase protocol" set forth in section 2.03(e) of the PSA, which makes repurchase the sole remedy as to any non-conforming loan where the loan breach materially and adversely affects the interests of the certificateholders or MBIA.
As a result of the 2008 financial crisis, loans representing 51% of the original loan balance defaulted, requiring MBIA to make over $296 million in claim payments. MBIA demanded that Credit Suisse repurchase those loans. Credit Suisse declined to repurchase them.
On December 24, 2009, MBIA initiated this action, alleging that it was fraudulently induced to participate in the transaction by defendants' false representations concerning: (1) the attributes of the securitized loans; (2) defendants' adherence to certain strict underwriting guidelines used to select the loans underlying the transaction; and (3) the due diligence conducted by defendants on the securitized loans to ensure compliance with the guidelines. MBIA also alleged that defendants induced it to participate in the transaction by making numerous false R & Ws in the insurance agreement and in other transaction documents. The complaint asserted various causes of action, including fraudulent inducement, breach of R & Ws, breach of the repurchase obligation, breach of the implied duty of good faith and fair dealing, and material breach of the insurance agreement.
On January 30, 2013, MBIA filed an amended complaint asserting, inter alia, fraudulent inducement, breach of the insurance agreement, and breach of the PSA's repurchase protocol, and seeking compensatory, consequential, rescissory, and punitive damages.
MBIA moved for summary judgment on the meaning of the MLS Rep and the No Monetary Default Rep, and on the standard applicable to its fraudulent inducement claim. MBIA argued that Insurance Law §§ 3105 and 3106 eliminated the common-law elements of loss causation and justifiable reliance.
Credit Suisse and DLJ (defendants) moved for summary judgment dismissing the fraudulent inducement claim, arguing that MBIA was unable to establish the element of justifiable reliance and that the fraud claim should be dismissed because the damages sought were duplicative of the damages available on the contractual "put-back" claims. They also sought a ruling that the MLS Rep and the No Monetary Default Rep should not be interpreted as tantamount to a "no-fraud representation."
The motion court granted in part and denied in part the motions for summary judgment. The court granted MBIA partial summary judgment with respect to the meaning of the MLS and No Monetary Default warranties. The court agreed with MBIA that the MLS warranty served to guarantee the accuracy of the information in the MLS, not merely that the information had been accurately transcribed from the loan file. The court rejected Credit Suisse's argument that so construing the warranty would in effect be tantamount to imposing a "no fraud rep," which Credit Suisse had declined to give.
With respect to the No Monetary Default Rep, the court rejected Credit Suisse's argument that the representation merely provided assurance that borrowers were not materially delinquent on the financial obligations under the mortgages and applied only to curable defaults, finding that such an interpretation would render the " no material event' language to be surplusage."
The court rejected MBIA's argument that sections 3105 and 3106 of the Insurance Law altered or eliminated any of the elements or standards that would otherwise be applicable to MBIA's claim that it had been fraudulently induced to issue the financial guaranty insurance for the transaction. The motion court reasoned that
"[s]ince § 3105 is silent on the issue of loss causation and it is clear from § 3106 that insurance companies cannot avoid liability due to false warranties if such losses are not related to the subject matter of the warranty, harmonizing §§ 3105 and 3106 requires MBIA to prove loss causation when its claim is based on false warranties."
The motion court accordingly held that MBIA was foreclosed from recovering losses attributable to conforming loans, explaining that those losses "do not arise from a breach," and represent "the very risk [the insurer] assumed" (internal quotation marks omitted). The court noted that recovery for such conforming loans was "simply a species of rescissory damages," which under precedent were not recoverable.
The motion court dismissed the remainder of the fraudulent inducement claim on the basis that the available fraud damages were "entirely duplicative of what [MBIA] would recover on its contractual put-back claims." The court found that the possibility of punitive damages was not a basis for maintaining an otherwise duplicative fraud claim. Having dismissed the fraud claim on these bases, the motion court did not reach the issue of justifiable reliance.
We now modify to deny plaintiff's motion for summary judgment as to the meaning of the No Monetary Default Rep and the MLS Rep, and otherwise affirm.
MBIA seeks "Claims Payment Damages" and "Repurchase Damages." The "Claims Payment Damages" consist of "all claims payments that MBIA has made . . . [or] will likely incur," and are designed to put MBIA in the same position it would have been in had the policy never been issued. As such, they constitute rescissory damages and are not recoverable by [*2]plaintiff monoline insurer seeking redress under an irrevocable policy. We have made clear that an insurer is "not entitled to damages amounting to all claims payments it made or will make under the policies," inasmuch as such damages are "rescissory damages to which the insurer is not entitled" (see Ambac Assur. Corp. v Countrywide Home Loans, Inc. (151 AD3d 83, 88 [1st Dept 2017], affd ___ NY3d ___, 2018 NY Slip Op 04686 [June 27, 2018]).
"Repurchase Damages" represent the difference between the claims payments MBIA made or is projected to incur, and those MBIA would have made had Credit Suisse repurchased nonconforming lines, i.e., those that breached the representations and warranties.
While such repurchase damages are in theory recoverable, the fraud claim was nonetheless correctly dismissed. It has long been the rule that parties may not assert fraud claims seeking damages that are duplicative of those recoverable on a cause of action for breach of contract (see e.g. Manas v VMS Assoc., LLC, 53 AD3d 451, 454 [1st Dept 2008]). As we noted in Manas, fraud damages are meant to redress a different harm than damages on a cause of action for breach of contract. Contract damages are meant to restore the nonbreaching party to as good a position as it would have been in had the contract been performed; fraud damages are meant to indemnify losses suffered as a result of the fraudulent inducement (see id.). Where all of the damages are remedied through the contract claim, the fraud claim is duplicative and must be dismissed (see id.; see also Chowaiki & Co. Fine Art Ltd. v Lacher, 115 AD3d 600, 600-601 [1st Dept 2014] [dismissing fraud claim seeking duplicative damages even where, as here, the plaintiff sufficiently alleged breach of an independent duty owed them independent of the contract]; Triad Intl Corp. v Cameron Indus., Inc., 122 AD3d 531, 531-532 [1st Dept 2014] [affirming dismissal of fraud claim where the damages sought on the fraud claim were duplicative, explaining that "plaintiff seeks the same compensatory damages for both claims . . . . Its purported fraud damages are actually contract damages"]; Mosaic Caribe, Ltd. v AllSettled Group, Inc., 117 AD3d 421, 422-423 [1st Dept 2014] [fraud claim duplicative of a breach of contract claim where the fraud claim sought the same damages, namely return of the deposit paid by the plaintiff under the contract]).
MBIA's claim that a different measure of interest might apply to a judgment related to a fraud, as opposed to a contract claim, is irrelevant, as interest is not an element of compensatory damages either in contract or in fraud. Nor does MBIA's request for punitive damages change the result. A party cannot bootstrap a fraud claim seeking duplicative relief merely by alleging a potential for punitive damages (see Mosaic Caribe, 117 AD3d at 422).
In connection with the foregoing, the court correctly determined that the fraudulent inducement claim is subject to the common-law fraud element of loss causation (see Ambac, 151 AD3d at 86-87). To the extent ever in doubt, the Court of Appeals has now conclusively ruled that the provisions of the Insurance Law cited by MBIA did not displace the common-law elements of justifiable reliance and loss causation in a cause of action for fraudulent inducement (2018 NY Slip Op 04686). The Court found that "[s]ection 3105 does not provide an affirmative, freestanding, fraud-based case of action" and does not " inform' a court's assessment of the longstanding common law elements of fraudulent inducement" (id. at *3).
Given the grounds for the dismissal of the fraud claim, i.e., duplicative damages, the court properly denied plaintiff's motion to supplement the record in opposition to defendant's motion with evidence that would bolster the factual allegations of fraud.
The court erred in granting MBIA's motion for summary judgment as to the meaning of the No Monetary Default Rep and the MLS Rep. In Ambac, this Court examined a materially identical No Monetary Default Rep. We held that the motion court erred in interpreting it, as a matter of law, to include borrower misrepresentation, explaining that "the better course is to hold a trial to inquire into and develop the facts to clarify the relevant legal principles and their application to the [] representations and warranties" (151 AD3d at 89 [internal quotation marks [*3]omitted]). That holding squarely applies to the No Monetary Default Rep, which is materially identical to the one at issue in Ambac. Credit Suisse offers a compelling argument that the motion court's broad interpretation of the representation was not correct.[FN2]
Similar reasoning requires denial of summary judgment as to the meaning of the MLS Rep (see Bear Stearns Mtge. Funding Trust 2007-AR2 v EMC Mtge. LLC (2014 Del Ch LEXIS 300, *5 [Del Ch 2014] [holding that a trial was required to determine whether a materially identical MLS Rep guaranteed "underlying truthfulness," as opposed to "accurate transcription"]).
Accordingly, the order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered March 31, 2017, which, insofar as appealed from as limited by the briefs, granted defendants' motion for summary judgment dismissing the fraudulent inducement claim, denied so much of plaintiff's motion for summary judgment as sought a ruling that an insurer does not have to prove loss causation in connection with a fraudulent inducement claim, granted so much of plaintiff's motion as sought a ruling on the meaning of the "No Monetary Default" representation and the "Mortgage Loan Schedule" representation in the Pooling and Service Agreement for the subject residential mortgage-backed securitization transaction, and denied plaintiff's motion to supplement the record in opposition to defendants' motion, should be modified, on the law, to deny plaintiff's motion as to the meaning of the representations, and otherwise affirmed, without costs.
All concur.
Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered March 31, 2017, modified, on the law, to deny plaintiff's motion as to the meaning of the representations, and otherwise affirmed, without costs.
Opinion by Manzanet-Daniels, J. All concur.
Renwick, J.P., Manzanet-Daniels, Andrias, Kern, Oing, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: SEPTEMBER 13, 2018
CLERK



Footnotes

Footnote 1:MBIA did not conduct its own loan-level review. Indeed, MBIA admits that it made a business decision to forgo reviewing the loans, a practice it had previously employed.

Footnote 2:Credit Suisse asserts that "borrower fraud" does not fit within the plain meaning of the second clause of the representation since such misrepresentation (unlike a missed payment or unpaid tax) does not require the "passage of time" to ripen into a default but constitutes a default from the moment it is made (see Bear Stearns Mtge. Funding Trust 2007-AR2 v EMC Mtge. LLC (2014 Del Ch LEXIS 300, *7 [Del Ch 2014] ["fraud generally has no grace period and cannot be cured"]).