Smith v Ryder (2024 NY Slip Op 24011)

[*1]

Smith v Ryder

2024 NY Slip Op 24011

Decided on January 17, 2024

Supreme Court, Albany County

Marcelle, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 17, 2024
Supreme Court, Albany County

Karla Smith, Plaintiff,

against
Richard Ryder, Jr., THE HEARST CORPORATION and 
 HEARST COMMUNICATIONS, INC., Defendants.

Index No. 903119-21

LaMarche Safranko PLLC, Cohoes 
(George E. LaMarche, of counsel) for Plaintiff
CARMAN, CALLAHAN & INGHAM
(James Carman, of counsel) for Defendant Richard Ryder, Jr.
BARCLAY DAMON LLP, Rochester
(Mark T. Whitford, Jr., of counsel) for Defendants The Hearst Corporation and Hearst Communications, Inc.

Thomas Marcelle, J.

The story that gives rise to this case is simple. On June 8, 2020, Defendant Richard Ryder, Jr. ("Ryder") was in the course of delivering newspapers on behalf of Defendants the Hearst Corporation and Hearst Communications, Inc. ("Hearst") when he negligently struck the Plaintiff Karla Smith ("plaintiff") in a crosswalk. The collision caused plaintiff serious personal injuries and inflicted substantial damages. No one disputes any of this.
Plaintiff sued not only the driver Ryder but also Hearst. Typically, only the wrong doer, here Ryder, is liable for his negligence. However, in some circumstances, the wrong doer's action can be imputed to a third person; thus, making the third person vicariously liable for the wrong doer's negligence. One form of vicarious liability, which plaintiff asserts in this case, is called respondeat superior.
Respondeat superior's origins trace back to eighteenth century common law. The doctrine [*2]held an employer "vicariously liable for torts committed by employees acting within the scope of their employment" (Rivera v State, 34 NY3d 383, 389—90 [2019]). The theory being that the employer empowered the employee to act and any harm caused by the employee would be attributed to the employer.[FN1]

Certainly, without an employer-employee relationship, Hearst is not vicariously liable for Ryder's negligence. Thus, it is incumbent upon the plaintiff to demonstrate that Ryder was an employee of Hearst at the accident's occurrence. And this is the friction point of the case. Hearst says that Ryder was not an employe but an independent contractor, as evidenced by a written agreement designating Ryder as such.
However, simply calling Ryder an independent contractor, even in writing, is hardly dispositive under the common law (Shah v Lokhandwala, 265 AD2d 396, 397 [2d Dept 1999]). Rather, Ryder's status depends on who controlled "the method and means by which [he did his] work " (D'Allaird v Markline Sales, Inc., 104 AD3d 1110, 1112 [3d Dept 2013]). "[T]he question of control is generally a question of fact [for the jury]" (Northacker v Cnty. of Ulster, 212 AD3d 86, 90 [3d Dept 2022]). Of course, a question of fact defeats a motion for summary judgment (see Carrion v Orbit Messenger, Inc., 82 NY2d 742, 744 [1993] [noting that "it is well settled that whether an operator of a delivery vehicle is an agent, potentially rendering the principal liable under the doctrine of respondeat superior, is a question for the trier of fact").
To circumvent the inevitable factual questions inherent under respondeat superior, Hearst argues this case is governed by statute rather than common law. Specifically, Hearst cites to the Labor Law and Workers' Compensation Law. In those statutes, the legislature excluded newspaper delivery persons from unemployment insurance coverage, the minimum wage, and workers' compensation coverage when, as here, there is an independent contractor agreement (see Labor Law § 511 [23] [a-c] [excluding from the definition of "employment" any "newspaper delivery persons" who delivers papers pursuant to a contract which "provides that [the delivery] person will not be treated as an employee with respect to such services for federal tax purposes"]; Workers Compensation Law § 2 [3] ["'Employer'" . . . shall not include delivering newspapers or shopping news to the consumer . . ."]).
While the two statutory independent contractor definitions do not precisely coincide, Hearst asserts that under both statutes, Ryder qualifies as an independent contractor. Now from this premise, Hearst concludes that Ryder's status as an independent contractor for statutory purposes should likewise apply under the circumstances of this negligence case. This conclusion necessarily hinges upon the proposition that by exempting newspaper delivery persons from receiving unemployment insurance and workers' compensation benefits, the statutes also protected corporations from vicarious liability for its delivery personnels' negligence.
Plaintiff says such an argument is hogwash. She argues that the Labor Law and the Workers' Compensation Law ("the statutes") have no bearing on Hearst's vicarious liability here. Rather, the statutes are confined solely to the administrative agencies' determination of benefit eligibility. Thus, according to plaintiff, the statutory definitions are meaningless in this situation—a tort committed against a party uninvolved in the employer-employee relationship.
Neither party has provided a reported case that answers the question of whether the statutes override the common law. Indeed, there appears to be no authority on this issue. Absent guidance, the court must determine the legislature's intent. The interpretation of legislative intent begins with the statutory language (Yatauro v Mangano, 17 NY3d 420, 426 [2011]). Thus, the words of the statute and what those words convey, in context, is what the statute means and what the legislature intended it to govern.
In this case, the statutes cover the relationship between newspaper corporation and its delivery personnel when an employment issue exists between the two. However, the statutes are silent about whether a newspaper company is exempt from vicarious liability when its delivery personnel negligently injures a third party. 
The question, of course, becomes how to deal with this silence. Sometimes legislative silence can be intentional. This is because legislators do not legislate in a vacuum; rather, they "legislate against a background of common-law adjudicatory principles " (Minerva Surgical, Inc. v Hologic, Inc., 141 S Ct 2298, 2307 [2021]). In other words, the legislature enacts laws with the understanding that courts will interpret them based on well-established methods of construction—and when the legislature does not explicitly resolve an issue, it intends that the canons of statutory construction take over and provide answers. 
One such rule of construction is that "an intention to change the rule of the common law will not be presumed" (Jones v City of Albany, 151 NY 223, 228 [1896]). Thus, "[t]he common law is never abrogated by implication" (Ambac Assur. Corp. v Countrywide Home Loans, Inc., 151 AD3d 83, 88 [4th Dept 2017]). Rather "a clear and specific legislative intent is required to override the common law" (Hechter v New York Life Ins. Co., 46 NY2d 34, 39 [1978]); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 52 at 318 [1st ed 2012] [requiring a "clear statement" by the legislature to abrogate the common law]). So, since the statutes do not specifically exempt newspaper corporations from vicarious liability for negligence committed by a delivery person, they do not displace the doctrine of respondeat superior in such cases.
Hearst opposes this statutory construction method. It argues that although laws are to be read with a presumption of retaining common law principles, such a presumption does not apply "when a statutory purpose to the contrary is evident" (Isbrandtsen Co. v Johnson, 343 US 779, 783 [1952]). Hearst says this is the case here for two reasons.
First, Hearst invokes a principle of jurisdictional supremacy. Hearst says that the Workers' Compensation Board has exclusive jurisdiction over torts that occur in the employer-employee relationship. True, but not particularly relevant here. It is only "where the availability of [workers'] compensation hinges upon the resolution of questions of fact or upon mixed questions of fact and law, [that] the [worker] may not choose the courts as the forum for the resolution of such questions" (O'Rourke v Long, 41 NY2d 219, 228 [1976]). Rather, as is the case here, "the exclusivity provisions of the Workers' Compensation Law are not implicated because this is not a situation in which [the plaintiff] seeks to recover tort damages for an [*3]employment related injury" (Hofsiss v Bd. of Educ. of Mamaroneck Union Free Sch. Dist., 287 AD2d 566, 568 [2d Dept 2001]). Thus, applying the doctrine of respondeat superior outside of the employer-employee framework does no violence to the Workers' Compensation Board's jurisdiction.
Second, Hearst argues allowing newspaper corporations to be vicariously liable for a drivers' negligence would create legal inconsistencies. Hearst imagines a scenario where a delivery driver is hurt in an accident and also injures a third party. Under this hypothetical, it is possible that the driver would be deemed an independent contractor in the administrative arena but an employee in a judicial forum.
A construction of the statutes that continence such inconsistent decisions would defeat the very purpose of the law—or so Hearst argues. To support its position, Hearst cites to Senator George Amedore "Introducer's Memorandum" (New York Bill Jacket, 2016 SB 6469, Ch 503). In particular, Hearst places heavy weight on Senator Amedore's concern that "the state ceased to follow [Department of Labor guidelines regarding newspaper delivery persons] consistently, resulting in uncertainty among newspapers, state agency officials and delivery persons as to the status of these relationships").
Several problems exist in using Senator Amedore's memo to wipe away the presumption of the common law's applicability. First, the memo refers to unemployment insurance claims not workers' compensation claims. Second, the inconsistency mentioned by the Senator relates to internal agency inconsistency, not inconsistencies between judicial decisions and administrative agency decisions. Third, a sponsor's memo, even if illuminating (which is not evident here), is seldom persuasive because it bears not on the thinking of the entire legislative body. That is, a majority of the legislature never endorsed the memo—the memo was not subject to amendment, it was not voted upon, and was not incorporated by reference within the statute—thus, the court is eternally reticent to derive a statute's meaning from a single Senator's position, even when the Senator sponsors the law.
In the end, the statutes regulate the relationship between the corporation and drivers in the administrative arena and nothing beyond that. Consequently, the court will deploy the time-honored canon that "an intention to change the rule of the common law will not be presumed" (Jones, 151 NY at 228). Here, the legislature, in terms of statutory language, never expressed a desire to control and govern how courts deal with cases where a plaintiff seeks to recover tort damages unrelated to employment. The court holds, therefore, that the common law doctrine of respondeat superior applies to this case.
That said, there is more to decide. In particular, plaintiff still must make a case that Ryder was Hearst's employee to overcome Hearst's summary judgment motion. Whether Ryder was an employee or an independent contractor depends upon Hearst's control over Ryder's work (D'Allaird, 104 AD3d at 1112,). If Hearst exercised only general supervisory powers over Ryder, plaintiff cannot impose liability on Hearst for Ryder's tortious conduct (Lara v Kadir, 201 AD3d 590, 591 [1st Dept 2022]).
The burden rests with plaintiff to prove that Ryder was an employee (Davies v Contel of New York Inc., 187 AD2d 898, 900, n 2 [3d Dept 1992]). Plaintiff cites to a litany of facts to satisfy this requirement. Now, these facts are not derived from a neutral reading of the record but are those favorable to the plaintiff. Undoubtedly, the court must view the evidence in the light most favorable to the non-moving party, "giving that party the benefit of every reasonable inference" (Boyce v Vasquez, 249 AD2d 724, 726 [3d Dept 1998]). Simply stated, the court must [*4]deny summary judgment, "if there is any doubt as to whether a material factual issue exists or if such an issue is even arguable" (Black v Kohl's Dept. Stores, Inc., 80 AD3d 958, 959 [3d Dept 2011]).
Plaintiff advances three salient arguments to meet her burden. First, plaintiff says Hearst controlled every detail of Ryder's delivery method. Ryder was required to follow the predetermined delivery schedules at prescribed times. Further, Ryder was provided with turn-by-turn directions that he had to follow. Further, if Ryder was sick or could not make his deliveries for any reason, he could not farm out his work to another. Rather, Ryder had to contact his manager, who would handle the substitution, and at times, if necessary, even have the corporation deliver the papers itself.
Second, plaintiff argues that Hearst controlled the monetary aspect of delivery. Hearst collected payment directly from the customers. If there was a loss to the company from customers not paying, Hearst absorbed that loss, not Ryder. Moreover, Hearst limited Ryder from enlarging his customer base. Indeed, Hearst forbade Ryder from soliciting new subscribers.
Third, plaintiff says that Hearst controlled the disciplinary process involving Ryder's performance. All complaints about Ryder's performance were made directly to Hearst. Hearst then exclusively dealt with the issue. Hearst could dock Ryder's pay upon complaint from a customer. If a complaint was made by a customer that Ryder became aware of, in order to find out more about the complaint Ryder had to talk to a manager, or a manager would address Ryder about the complaint. If Ryder wished to dispute a complaint, the reversal of that complaint was in the sole discretion of Ryder's manager. Ryder never directly interfaced with the customer.
To be sure, Hearst points to evidence to suggest that Ryder was an independent contractor. Of course, there was the agreement between Ryder and Hearst which labeled Ryder an independent contractor. Additionally, Hearst did not deduct taxes from Ryder's pay, nor did Hearst offer Ryder insurance. Further, Ryder had to provide and pay for his own supplies, and he had to provide his own transportation to make deliveries. These factors support Hearst's position that it had nothing more than general supervisory control over Ryder.
Returning to Ryder's classification, as the Court of Appeals succinctly put it long ago, an employee "is an agent who works under supervision and direction of his employer; and independent contractor is one who is his own master" (In re Morton, 284 NY 167, 172 [1940]). Granting the inferences most favorable to plaintiff, Ryder hardly seems like the master of his own employment. He was managed and subjected to management at a high degree—meaning that a jury may reasonably find that Ryder was a Hearst employee.
Moreover, this conclusion is in accord with close precedent. For example, in Mason v Spendiff, 238 AD2d 780 (3d Dept 1997), the Third Department decided a plaintiff could sue a newspaper for the negligence committed by a newspaper delivery person under respondeat superior. On facts that substantially mirror this case, the court held that "the record reveals sufficiently conflicting evidence to preclude [summary judgment]" (Id. at 781). Likewise, the Second Department, in a newspaper delivery case (again with facts almost matching the ones here) concluded that "a question of fact [exists] as to whether the deliveryman was an employee of the [paper] or an independent contractor at the time of the accident" (Lane v Lyons, 277 AD2d 428, 428 [2d Dept 2000]).
Based upon these closely aligned appellate cases, the court finds that plaintiff has identified a triable question of fact and that a jury, even in the face of conflicting evidence, could reasonably and rationally conclude that Ryder was a Hearst employee and thereby making [*5]Hearst vicariously liable for Ryder's negligence under a theory of respondeat superior.
Therefore, it is
Ordered that the Defendants THE HEARST CORPORATION's and HEARST COMMUNICATIONS, INC's motion for summary judgment is denied.
The foregoing constitutes the Decision and Order of the court.
DATED: January 17, 2024
Thomas Marcelle
Supreme Court Justice

Footnotes

Footnote 1: This vicarious liability includes cases where the employee's vehicle negligently strikes a pedestrian (see Philadelphia & Reading R Co v Derby, 55 US 468, 480 [1852] [citing to the English common law principle applied where "an old woman" was struck by a carriage—"whenever the master has intrusted [sic] the servant with the control of the carriage, it is no answer that the servant acted improperly in the management of it; but the master, in such case, will be liable, because he has put it in the servant's power to mismanage the carriage, by intrusting [sic] him with it"]).